**In re Samuel Frank LONG, Debtor.**

**Samuel Frank LONG, Plaintiff,**

v.

**Jacqueline D. DONAHUE, Defendant.**

**Adv. No. 92–4278.**

United States Bankruptcy Court,
W.D. Missouri.

Dec. 21, 1992.

Steven L. Crouch, Kansas City, MO, for plaintiff.

Ellen Greenberg, Kansas City, MO, for defendant.

**ORDER AND MEMORANDUM OPINION**

KAREN M. SEE, Bankruptcy Judge.

Two related matters are before the Court: a motion to modify automatic stay and a complaint to determine dischargeability of a debt. The court has jurisdiction over these matters pursuant to 28 U.S.C. § 1334(b), and may enter final orders pursuant to 28 U.S.C. § 157(b)(2)(I).

The issue is whether division of debtor's ERISA-qualified pensions by a pre-petition dissolution decree and property settlement creates a nondischargeable property interest if debtor's ex-spouse is unable to obtain a Qualified Domestic Relations Order before the bankruptcy petition is filed.

Debtor's pensions are excluded from property of the estate pursuant to § 541(c)(2). *Patterson v. Shumate,* — U.S. —, 112 S.Ct. 2242, 119 L.Ed.2d 519 (1992). Prohibiting entry of the QDRO post-petition would not increase the assets of the estate available for the benefit of creditors, but would only increase Debtor's pension interests at the expense of his former wife. For the following reasons, the court holds that debtor's former wife has a nondischargeable property interest arising from the pre-petition dissolution decree, and orders the automatic stay modified for the purpose of allowing entry of a Qualified Domestic Relations Order.

## I. FACTS

The parties entered into a joint stipulation of facts and agreed not to submit live testimony or other evidence at trial. The parties were divorced by a Decree of Dissolution entered on December 29, 1990. The state court found that Debtor's three ERISA-qualified pension plans were marital property and made the following divisions of the pensions pursuant to the Decree:

a. The International Union of Operating Engineers Central Pension, Defendant Jacqueline Donahue was allocated 40 percent of the pension.

b. International Union of Operating Engineers General Pension, Defendant Jacqueline Donahue was allocated 40 percent of the pension.

c. Operating Engineers Local 101 Pension Fund, Defendant Jacqueline Dona-

hue was allocated 24 percent of the pension.

Debtor Sam Long appealed the Decree to the Missouri Court of Appeals. One of his main points on appeal was that the trial court erred in setting aside part of his pensions to his wife. On January 28, 1992, the appellate court affirmed the judgment of the trial court, including the property settlement award.

Debtor filed for bankruptcy relief under Chapter 7 on May 20, 1992. A Qualified Domestic Relations Order (QDRO) was not entered in the domestic relations case at any time before the bankruptcy. Debtor listed his former wife, Ms. Donahue, on his schedules as a creditor in an amount unknown. The parties stipulated that the Decree did not meet the requirements of an enforceable QDRO and that the pension award was not in the nature of alimony, child support, or maintenance but was intended as a property settlement.

At the request of Debtor's counsel, the court conducted a pretrial conference in late afternoon the day before trial, during which the parties agreed to several additional statements of undisputed fact, which the judge wrote down in the presence of the parties. The parties stipulated that Ms. Donahue attempted to obtain approval of the QDRO in a timely fashion. At trial, Debtor's counsel disavowed entering into a stipulation as to timeliness. In light of counsel's confusion as to the stipulated facts, the court finds, independent of the stipulation, based on facts on record, that Ms. Donahue attempted to obtain the QDRO in a timely manner upon completion of the appeal.

The parties agree that the pension administrators refused to approve a QDRO until the pension issue was resolved by the court of appeals. Although no specific dates were offered as evidence, the parties do not dispute that efforts to obtain the

QDRO were underway at the time debtor filed bankruptcy. After the appellate decision became final, there was a period of about three months before the bankruptcy intervened. The court finds that this period was not unreasonable in light of the fact that it was necessary to communicate with administrators of three different pension plans,[1] and the trial court record was under seal.[2]

This is not a case where the former spouse sat on her rights by failing to diligently pursue entry of the QDRO prior to bankruptcy. Ms. Donahue acted as promptly as possible to obtain the QDRO, and debtor is the party responsible for the lengthy delay in the process which was stayed by the bankruptcy. The period in which Ms. Donahue could accomplish the necessary transactions was controlled solely by debtor, who elected first to appeal the state court judgment, and then elected the time to file bankruptcy.

On August 6, 1992, Ms. Donahue filed a Motion for Relief from Automatic Stay to allow the state domestic relations court to enter a QDRO. Debtor filed an adversary proceeding alleging that without a pre-petition QDRO, Ms. Donahue's claim was dischargeable in bankruptcy.

## II. QUALIFIED DOMESTIC RELATIONS ORDERS

In order for the ex-spouse to have an enforceable interest against debtor's ERISA-qualified plan there must be a qualified domestic relations order (QDRO) in place. A QDRO is an express statutory exception to the anti-alienation provisions required for pensions governed by the Employee Retirement Income Security Act (ERISA). 29 U.S.C. § 1056(d)(1). Restrictions on assignment and alienation "shall apply to the creation, assignment, or recognition of a right to any benefit payable

---

1. ERISA provides that in the case of any domestic relations order received, "within a reasonable period, the plan administrator shall determine whether such order is a qualified domestic relations order...." 29 U.S.C. § 1056(3)(G)(i)(II). Congress undoubtedly anticipated some delays in processing QDRO's.

2. It is unclear why the record was under seal, but it appears it was because debtor, who is prominent in union activities, is a well-known public figure in the Kansas City area, and certain evidence concerned extra-marital affairs.

with respect to a participant pursuant to a domestic relations order, except ... if the order is determined to be a qualified domestic relations order." 29 U.S.C. § 1056(d)(3)(A). A "domestic relations order" means "any judgment, decree, or order (including approval of a property settlement agreement) which:

> (I) relates to the provision of child support, alimony payments, or marital property rights to a spouse, former spouse ... and
>
> (II) is made pursuant to a State domestic relations law (including a community property law).

The anti-alienation provisions of ERISA are inapplicable to a QDRO. The requirements for a QDRO are provided by 29 U.S.C. § 1056(d)(3)(B)–(E) and summarized below. A QDRO is a special type of domestic relations order:

> (1) which creates or recognizes the existence of an alternate payee's right to, or assigns to an alternate payee the right to, receive all or a portion of the benefits payable with respect to a participant under a plan....

29 U.S.C. § 1056(d)(3)(B)(i)(I).

■ A QDRO must specify the name, last known mailing address of both the plan participant and alternate payee, amount or percentage of participant's benefits to be paid to the alternate payee, or the manner in which the percentage will be determined, the number of payments due under the order, and the identity of the plan subject to the QDRO. 29 U.S.C. § 1056(d)(3)(B)–(C). The Longs' decree of dissolution did not satisfy the requirements for a QDRO because it did not specify the number of payments due under the order.

■ Notwithstanding the state court's division of the pensions as marital property, the dissolution decree does not create a legal right to debtor's pensions that Ms. Donahue may enforce against the pension administrators. State domestic relations law is preempted "in rare instances where Congress has directly and specifically legislated in the area...." *Mansell v. Mansell,* 490 U.S. 581, 587, 109 S.Ct. 2023, 2028, 104 L.Ed.2d 675 (1989). Although Ms. Dona-

hue has no recognizable legal right under ERISA to debtor's pension benefits because she was unable to obtain the QDRO prepetition, she has an equitable interest in debtor's pensions arising from entry of the decree of dissolution. That equitable interest is the right to obtain a QDRO arising from the pre-bankruptcy division of the pensions by the dissolution decree. Ms. Donahue's right to obtain a QDRO is not dischargeable in bankruptcy.

## III. PROPERTY RIGHT OR DEBT?

Classification of the claim against debtor's pension funds as either a property right or a debt is necessary to determine whether Debtor can discharge his obligation to pay his ex-wife a portion of his pensions as set forth in the Decree of Dissolution. If division of the pensions creates a debt rather than a property interest in favor of the ex-spouse, then any award to the ex-spouse not in the nature of alimony, child support or maintenance is dischargeable. *See,* 11 U.S.C. § 523(a)(5).

Debtor argues that without a QDRO, his ex-spouse's interest in the pension funds amounts to an unperfected judgment lien created by the divorce decree and is dischargeable as a debt arising from a property settlement. Ms. Donahue responds that the QDRO merely quantifies the ex-spouse's ownership interest and is not required to establish ownership of the funds. The court concludes that Ms. Donahue's right to obtain entry of the QDRO is not a dischargeable debt, but is in the nature of a property interest.

The decree purported to divide debtor's pensions according to each spouse's marital contributions. According to the stipulated facts, the pension interests awarded to Ms. Donahue were not in the nature of alimony, child support or maintenance, but were intended as a property settlement. Debts arising from a divorce decree that are in the nature of a property settlement are not excepted from discharge under § 523(a)(5). *Bush v. Taylor,* 912 F.2d 989, 993 (8th Cir.1990). In this case, however, there is no debtor-creditor relationship between the

parties arising from the property settlement. Entry of a QDRO herein is more akin to exercising a property right than to collection of a pre-petition debt.

The court rejects debtor's contention that, without a prepetition QDRO, Ms. Donahue's interest in the pensions is a dischargeable claim against property of debtor. A debt is "liability on a claim." 11 U.S.C. § 101(12). A claim is a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." 11 U.S.C. § 101(5). A claim against the debtor includes a claim against property of the debtor. 11 U.S.C. § 102(2). A right to payment means an enforceable obligation. *Johnson v. Home State Bank*, — U.S. —, —, 111 S.Ct. 2150, 2154, 115 L.Ed.2d 66 (1991). Congress intended the broadest possible definition of a claim. *Id.* Notwithstanding the broad definition of a claim, Ms. Donahue has something other than a right to payment from the Debtor or his property pursuant to the Decree of Dissolution.

As discussed above, a domestic relations order not in the form of a QDRO does not create an enforceable right to benefits against an ERISA-qualified pension; therefore, Ms. Donahue's right to obtain a QDRO can not be classified as a debt. The Decree of Dissolution gave Ms. Donahue a right to obtain the QDRO and transfer legal ownership of her portion of Debtor's pensions awarded as marital property.

In Missouri, an interest in pension funds resulting from contributions during marriage is marital property subject to division in a dissolution action. *In re Marriage of Cope*, 805 S.W.2d 303 (Mo.App. 1991). A divorce decree or other court order dividing the pension divests the participant of the interest awarded to the exspouse. *Bush v. Taylor*, 912 F.2d 989 (8th Cir. 1990); *In re Resare*, 142 B.R. 44 (Bankr.D.R.I.1992); *In re Kinder*, 133 B.R. 151 (Bankr.W.D.Mo.1991); *In re Peterson*, 133 B.R. 508 (Bankr.W.D.Mo.1991). Clearly, the trial court's intent was to divide the pensions as marital property.

A claim for equitable distribution of marital assets is dischargeable in bankruptcy as a general unsecured claim if the valuing and equitable distribution of the property does not occur before filing the bankruptcy petition. *Perlow v. Perlow*, 128 B.R. 412 (E.D.N.C.1991). This case is distinguishable from *Perlow* because the trial court valued and divided Mr. Long's pensions as marital property before he filed for bankruptcy. A dissolution decree becomes a final judgment when it disposes of all property of the parties. *Frame v. Frame*, 696 S.W.2d 332, 335 (Mo.App.1985). In Missouri, a property settlement "shall be a final order not subject to modification; provided, however, that orders intended to be qualified domestic relations orders affecting pension, profit sharing and stock bonus plans ... shall be modifiable only for the purpose of establishing or maintaining the order as a qualified domestic relations order or to revise or conform its terms so as to effectuate the expressed intent of order." MO.REV.STAT. § 452.-300(6) (Cum.Supp.1991).

The Missouri statute supports the conclusion that Ms. Donahue received an equitable property interest in the debtor's pensions at the time the Decree was entered. Entry of the QDRO is an act "necessary or required to effect the terms" of court's order as provided by the dissolution decree, rather than a substantive modification of the parties' marital property interests. Entry of the QDRO will not alter the amount of marital property awarded or otherwise affect the finality of judgment. Debtor holds bare legal title to his ex-wife's pension interests until the QDRO is entered. Ms. Donahue's right to obtain a QDRO was fixed pre-petition when the Decree became final, and is not dischargeable as a debt.

## IV. CONSTRUCTIVE TRUST THEORY

Alternatively, the court finds that debtor holds his ex-wife's portion of the pensions in constructive trust until the QDRO is entered. Plaintiff contends that Debtor's obligation to pay over a portion of his pensions creates a constructive trust against the proceeds for the benefit of the

non-debtor spouse. Plaintiff asserts that Debtor will be unjustly enriched if he retains all the pension funds because both spouses contributed money to the pensions and, during the marriage, debtor dissipated marital assets in extra-marital affairs.

Regardless of the equities, the Supreme Court strictly construes ERISA's anti-alienation requirements. *Guidry v. Sheet Metal Workers National Pension Fund,* 493 U.S. 365, 110 S.Ct. 680, 107 L.Ed.2d 782 (1990). *Guidry* held that ERISA prohibited imposition of a constructive trust in favor of a labor union against pensions of a union officer convicted of embezzling union funds. The union had no basis for asserting an equitable remedy against the officer's pension other than his criminal wrongdoing. *Id.* at 376, 110 S.Ct. at 687. The Court commented that "[a]s a general matter, courts should be loath to announce equitable exceptions to legislative requirements or prohibitions that are unqualified by the statutory text." *Id.*

This case is distinguishable from *Guidry.* A constructive trust on behalf of Ms. Donahue is warranted based on the particular facts of this case because the text of ERISA expressly provides for division of pension interests pursuant to a QDRO, and the property settlement creates her right to a QDRO. A constructive trust is an appropriate equitable remedy whenever "title to property is found in one who in fairness ought not to retain it." G.T. Bogert, TRUSTS § 77, at 286 (6th ed.1987). Other courts have implied a constructive trust in favor of an ex-spouse against pension proceeds in the hands of a debtor. *See, Bush v. Taylor,* 912 F.2d 989, 993 (8th Cir.1990); *In re Kinder,* 133 B.R. 151, 153 (Bankr. W.D.Mo.1991); *In re Farrow,* 116 B.R. 310, 313 (Bankr.M.D.Ga.1990). Ms. Donahue has a sufficient pre-petition interest in her court-ordered share of debtor's pension to impose a constructive trust. *Bush v. Taylor,* 912 F.2d 989 (8th Cir.1990). Ms. Donahue could do nothing more to effectuate entry of the QDRO until the after the appeal. It would be unfair to allow debtor to mis-use the Bankruptcy Code and to manipulate the timing of the state and bankruptcy court proceedings to undo the judgment of the state court and thereby prevent his ex-spouse from obtaining pension property awarded pre-petition.

## V. CONCLUSION

Several competing interests are involved in this dispute. The Eighth Circuit, in a similar case, remarked that "[w]e do not believe that Congress intended the Bankruptcy Code's grace for honest debtors to be used as [debtor] suggests, and Congress's actions with regard to federally regulated pension plans suggest as much ... We doubt that Congress ever intended that a former wife's judicially decreed sole and separate property interest in a pension payable to her former husband should be subservient to the Bankruptcy Court's goal of giving the debtor a fresh start." *Bush,* 912 F.2d 989, 993–94. Congress clearly intended that an ex-spouse could obtain an enforceable pension interest with a QDRO and presumably realized that processing of the QDRO could be slow. The dissolution decree granted Ms. Donahue a pre-petition right to obtain a portion of debtor's pensions with a QDRO.

The domestic relations court divided the pensions as marital property and the appellate court reviewed the pension division and found it to be fair and equitable. Debtor failed to meet his burden of proof that Ms. Donahue's efforts to get the QDRO were untimely. The stipulated facts indicate that Ms. Donahue could do nothing more to complete the transfer of the pension interests from December, 1990 until the appeal was final after January, 1992. Debtor prevented entry of the QDRO by filing the appeal and by the timing of his bankruptcy petition. Upon conclusion of the appeal, Ms. Donahue would have been absolutely entitled to obtain the QDRO and transfer ownership of the pensions but for debtor's bankruptcy. It would be unfair and inequitable for debtor, after losing his appeal on the pension division issue, to use the automatic stay to prevent his ex-spouse from exercising her right to obtain a QDRO.

The court rejects debtor's argument that an ex-spouse has no enforceable right to

complete the transfer of the property interest if a QDRO is not entered prior to bankruptcy. Such a result would allow a debtor to have absolute control over the transfer of a pension interest previously divided as marital property. A debtor could easily thwart an award of a pension to an ex-spouse by manipulating the timing of bankruptcy to stay entry of a QDRO immediately following the divorce. A debtor is not entitled to manipulate the legal system in order to exercise such absolute control in derogation of the state court's decree. Moreover, prohibiting entry of the QDRO post-petition would not increase assets of the estate for the benefit of creditors, but would only increase Debtor's pension interests at the expense of his ex-wife. Debtor's pensions are excluded from property of the estate pursuant to § 541(c)(2). *Patterson v. Shumate*, —— U.S. ——, 112 S.Ct. 2242, 119 L.Ed.2d 519 (1992). State courts have expertise in the area of domestic relations, and the court will not alter the terms of this dissolution decree where to do so would provide no benefit to the estate. Debtor's argument would subvert the judgment of the appellate court and encourage future abuses of the Bankruptcy Code. Ms. Donahue's interest in debtor's pensions as determined by the pre-petition dissolution decree is nondischargeable. Accordingly, it is hereby

ORDERED, ADJUDGED AND DECREED as follows:

1. Defendant Donahue's motion to modify automatic stay is granted, and the automatic stay is modified for the purpose of obtaining a Qualified Domestic Relations Order; and

2. On debtor's Complaint to Determine Dischargeability of Pension Obligations, judgment is entered in favor of defendant Jacqueline Donahue, and against plaintiff/debtor Samuel Long, with costs assessed against plaintiff/debtor.