In re Hughey L. DEBOLT, Debtor.

Hughey L. DEBOLT, Plaintiff,

v.

COMERICA BANK, Ford Motor
Company Pension Fund,
Defendants.

Hughey L. DEBOLT, Plaintiff,

v.

Mary L. DEBOLT, Defendant.

Bankruptcy No. 93–23768 JKF.
Adv. Nos. 94–2002 [1], 93–2552.

United States Bankruptcy Court,
W.D. Pennsylvania.

Dec. 23, 1994.

---

1. The file is numbered 94–0002 but, for purposes of electronic docketing, we use the number appearing in the caption.

Edward A. Olds, Pittsburgh, PA, for Hughey L. Debolt.

Henry W. Kishman, Vermilion, OH, for Mary L. Debolt.

Eric A. Schaffer, Pittsburgh, PA, and Timothy R. Greiner, Morristown, NJ, for Comerica Bank and Ford Motor Co. Pension Fund.

## MEMORANDUM OPINION

JUDITH K. FITZGERALD, Bankruptcy Judge.

In these consolidated adversary actions, Hughey L. Debolt, a chapter 13 debtor (hereafter "Debtor"), seeks a determination that certain obligations pursuant to orders of the Ohio state court in his divorce proceeding created debts dischargeable in this bankruptcy.

At Adversary 93–2552, Debtor contends that Mary L. Debolt, his ex-wife, possesses a dischargeable claim against his bankruptcy estate by virtue of qualified domestic relations orders entered pursuant to an Ohio state court divorce decree. Debtor seeks to avoid an alleged judgment lien created by the orders against his property interests. Mrs. Debolt moves for summary judgment on the basis that the portion of the pension awarded to her is not a claim against Debtor's property, but is her sole and separate property.

At Adversary 94–2002, Debtor seeks preliminary and permanent injunctive relief against the pension plan trustee and requests that all current and future pension benefits

be relinquished to his estate. He also contends that Comerica Bank, the pension trustee, and Ford–UAW Retirement Plan,[2] the plan administrator, (hereafter collectively "Pension Trustee") violated the automatic stay by continuing to distribute pension funds to Mrs. Debolt after the filing of the bankruptcy petition. Debtor seeks to hold the Pension Trustee in contempt with respect to the distributions to Mrs. Debolt. The Pension Trustee filed a motion to dismiss this adversary on the grounds that (1) its actions do not violate the stay and (2) Mrs. Debolt's interest does not constitute a claim against the bankruptcy estate but is her sole and separate property.

Debtor concedes that his support obligation is nondischargeable. He asserts, however, that payment of support from his interest in the pension plan violates the stay. He also contends that the award of an interest in the pension to Mrs. Debolt is a dischargeable property settlement.

Debtor filed a motion for summary judgment applicable in both adversaries relying on the terms of the orders of the Ohio state court and the pension plan.[3]

Three issues are before this court for decision: (1) whether Ohio or Pennsylvania state property law determines Mrs. Debolt's pension interest, (2) whether the approximate 50 percent pension interest awarded to Mrs. Debolt by the state court constitutes her sole and separate property or a claim against Debtor's property, and (3) whether payment of support to Mrs. Debolt from Debtor's

portion of the pension is in violation of the automatic stay.[4]

On April 7, 1956, Hughey and Mary Debolt were married in Pennsylvania. The couple resided in Loraine, Ohio, where Debtor was employed by Ford Motor Company and participated in the company's Retirement Plan. The plan is governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et seq.

The couple was divorced pursuant to a decree entered on March 30, 1993, by the Erie County, Ohio, Court of Common Pleas. The decree included a division of property and a support award. Both items were memorialized in two Qualified Domestic Relations Orders (hereafter "QDROs"). Pursuant to the first QDRO, Mrs. Debolt was awarded approximately a 50 percent interest in Debtor's pension. The order identified Debtor as a primary participant with a vested interest in the Retirement Plan and Mrs. Debolt as an alternative recipient.

The portion of the divorce judgment pertaining to spousal support awarded Mrs. Debolt support in weekly installments of decreasing amounts over a period of approximately nine years. The second QDRO, filed with the state court on July 14, 1993,[5] provided for deduction from Debtor's income of support amounts.[6] Debtor was employed at the time of the divorce. He took early retirement, apparently voluntarily reducing his income, two months after the divorce judgment was entered.[7]

According to the affidavit of Kimberly Jenison, a legal assistant in the office of the

---

2. In the complaint, Debtor incorrectly named Ford–UAW Retirement Plan as Ford Motor Company Pension Fund.

3. Debtor also includes the schedules and statements filed in this bankruptcy case, apparently to show that the state court orders have deprived him of all income from his pension.

4. The amendments to the Bankruptcy Code which took effect on October 22, 1994, are not applicable to this case. Bankruptcy Reform Act of 1994, Pub.L. No. 103–394, § 702, 108 Stat. 4106, 4150–51 (1994).

5. The order is not dated but bears a Court of Common Pleas "filed" stamp bearing the July 14, 1993, date.

6. In Count III of his amended complaint at Adversary 93–2552, Debtor asserts that he has not received credit for $2,223.49 applied to his support obligation in arrears from the proceeds from the sale of the marital residence. The issue is contested. We have insufficient evidence of record to address the credit issue here and will schedule further proceedings.

7. In her brief opposing Debtor's motion for summary judgment at Adversary 93–2552, Mrs. Debolt asserts that if Debtor had worked until "a normal retirement age" when, apparently, his support obligation would be extinguished, his half of the pension funds would not be encumbered. Brief at 2 n. 1.

general counsel for Ford Motor Company, the total monthly benefit under the retirement plan was $1,751.95 as of June 1, 1993, Debtor's retirement date, and $1,810.34 as of October 1, 1993. *See* Affidavit of Ford Motor Company in Support of Defendants' Motion to Dismiss Adversary Complaint, Brief on Behalf of Defendants in Support of Motion to Dismiss Adversary Complaint, Docket Entry 9, Adversary 93–2002.

Once Mrs. Debolt's 50 percent pension interest was deducted from Debtor's monthly allowance of $1,751.95, only $892.79 per month (the equivalent of $206.03 per week) was available to satisfy the required $306 per week in spousal support. Thus, the order for support could not be satisfied from this pension. Nevertheless, Debtor retired as of June 1, 1993, two months after entry of the divorce judgment. The first retirement benefit check was issued on July 15, 1993. The first payment to Mrs. Debolt on her one-half interest was made on or about August 1, 1993. The first payment of support to Mrs. Debolt pursuant to the QDRO was made on or about September 1, 1993. Thereafter, Debtor moved to Pennsylvania and filed this chapter 13 on October 27, 1993.[8] Debtor avers that he falls into arrears of about $400 monthly on this support obligation because his pension is insufficient to pay the entire award. Debtor's Brief in Support of His Motion for Summary Judgment at 6. Debtor makes no other payments because, he alleges, he has no other income, although why that is so is not evidence of record.

The Pension Trustee and Mrs. Debolt contend that the automatic stay does not preclude distribution of the 50 percent pension interest to Mrs. Debolt inasmuch as the divorce decree awarded it as Mrs. Debolt's sole and separate property, not as a claim on Debtor's interest. Therefore, it is argued, the award constitutes neither a debt that can be discharged nor a lien that can be avoided. Instead, Pension Trustee asserts that it is not in violation of the stay in distributing Mrs. Debolt's half interest, and that it has a

legal obligation to remit the support payments as a result of the Ohio state court orders which were issued pursuant to Ohio's domestic relations laws and ERISA.

In this case, we have reached three conclusions. First, with respect to the property interest issue, Ohio law applies rather than Pennsylvania law due to the significant relationship between Ohio and the parties and Ohio's corresponding strong governmental interest in the outcome. Second, under Ohio law, the divorce decree transformed the marital property of the pension into new and separate interests. Therefore, the interest in the pension awarded to Mrs. Debolt is her sole and separate property and not subject to Debtor's reach through the bankruptcy process. Third, the support payments are made from Debtor's interest in the pension fund which constitutes estate property under 11 U.S.C. § 541 and § 1306. Because relief from stay has not been sought or granted, the support payments are being made in violation of the stay, notwithstanding the fact that Debtor's obligation to pay support, as Debtor acknowledges, is nondischargeable.

## Discussion

### I. Ohio Law Applies

 Property rights are determined by reference to state law. *Butner v. U.S.*, 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979). The question here is whether Pennsylvania or Ohio law governs. Debtor now is domiciled in Pennsylvania and filed a chapter 13 in the Bankruptcy Court for the Western District of Pennsylvania. Debtor's employment endured in Ohio for over 30 years during which time he and Mrs. Debolt resided and owned real estate there. The court that decided the divorce action and entered the divorce decree and orders now at issue is an Ohio court and the orders were entered pursuant to and based on Ohio law and in accordance with ERISA. Mrs. Debolt continues to live in Ohio and receives support

---

**8.** The proposed chapter 13 plan provides payments to only one unsecured creditor, Mrs. Debolt. In the plan, Class I addresses the administrative claims of the chapter 13 trustee. Class III deals with Mrs. Debolt's 50 percent pension interest. Class II is composed of Mrs. Debolt's support arrearage claim. With respect to the support arrearages, Class II provides for payments of $105 per month for 36 months.

payments from the Pension Trustee through the Erie County, Ohio, Child Support Enforcement Agency.[9] Thus, Ohio law appropriately will define the ex-spouses' property interests.

## II. Pension Interest Awarded in Divorce Decree

 Section 541(c)(2) of the Bankruptcy Code provides

A restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law is enforceable in a case under this title.

11 U.S.C. § 541(c)(2). *Patterson v. Shumate,* ── U.S. ──, 112 S.Ct. 2242, 119 L.Ed.2d 519 (1992), held that ERISA is "applicable nonbankruptcy law". ERISA's anti-alienation restrictions can be abrogated by QDROs. *See* 29 U.S.C. § 1056; 26 U.S.C. § 401. It is clear that federal statutes governing pensions contemplate awards of pensions to non-employee spouses as separate property. The question in this case, however, is whether separate property interests were created. It is not disputed that Debtor's retirement plan is ERISA qualified. The plan restricts alienation, sale, transfer, assignment, pledge, or other encumbrance of the benefit. *See* Benefit Plans and Agreements ° UAW and the Ford Motor Company ° Volume II Retirement Plan Insurance Program Dated October 7, 1990, Exhibit 7 to Debtor's Motion for Summary Judgment (hereafter "Benefit Plan"). In order to be qualified for tax-deferred treatment under federal law, pension plans must contain anti-alienation provisions. 29 U.S.C. § 1056(d)(1); 26 U.S.C. § 401(a)(13)(A). An exception is provided for Qualified Domestic Relations Orders. 29 U.S.C. § 1056(d)(3); 26 U.S.C. § 401(a)(13)(B). A QDRO is defined as

(i) ... a domestic relations order—

(I) which creates or recognizes the existence of an alternate payee's right to, or assigns to an alternate payee the right to, receive all or a portion of the benefits payable with respect to a participant under a plan, and

(II) with respect to which the requirements of subparagraphs (C) and (D)[10] are met, and

(ii) the term "domestic relations order" means any judgment, decree, or order (including approval of a property settlement agreement) which—

(I) relates to the provision of child support, alimony payments, or marital property rights to a spouse, former spouse, child, or other dependent of a participant, and

(II) is made pursuant to a State domestic relations law (including a community property law).

29 U.S.C. § 1056(d)(3)(B). The state court orders in this case have been determined by the Pension Trustee to be in compliance with the law governing QDROs. We agree. The assignment by the state court of benefits to Mrs. Debolt as an alternative recipient is not violative of the anti-alienation requirement. *See* 29 U.S.C. § 1056(d)(3)(J), (K). *See also* 26 U.S.C. § 414(p)(2) (listing requirements for QDROs). There is no dispute that the domestic relations orders issued by the state court in this case are QDROs. Thus, the transfer of the pension interest to Mrs. Debolt was in accordance with applicable nonbankruptcy law. *See* 11 U.S.C. § 541(c)(2).

 Property interests generally are defined and created by state law. *Butner v. U.S.,* 440 U.S. 48, 55, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979). "Unless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding." *Id.* The question remains whether the interest awarded to Mrs. Debolt is her separate property or property of the bankruptcy estate. To determine whether the Ohio judgment created a separate ownership interest or merely created a claim against Debtor's interest, we must examine Ohio law.

---

**9.** Correspondence with Debtor from the Pension Trustee contains a return address in Michigan. Notwithstanding this fact, all significant contacts are with Ohio.

**10.** These subparagraphs relate, *inter alia,* to address, percentage of benefits, number of payments and plan terms.

■■ Section 3105.171(C)(2) of the Ohio Revised Code provides that each spouse shall be considered to have contributed equally to the production and acquisition of marital property. Upon the termination of marriage, Ohio permits its courts to divide marital property and award separate interests in it to each spouse. Ohio Rev.Code § 3105.171(C). According to Ohio law, Debtor's pension was marital property and subject to division upon divorce. Ohio Rev.Code § 3105.171(A)(3)(a)(ii); *Powell v. Powell,* 49 Ohio App.3d 56, 550 N.E.2d 538, 540 (1989). In a divorce action, "a court may either divide the interest in a retirement plan or award it entirely to one party depending upon what would be equitable under the circumstances." *Welly v. Welly,* 55 Ohio App.3d 111, 562 N.E.2d 914, 916 (1988). There is no requirement that the division be equal, only equitable. *Green v. Green,* 1990 WL 131888 at *3 (Ohio App., August 23, 1990), citing *Cherry v. Cherry,* 66 Ohio St.2d 348, 421 N.E.2d 1293, 1298 (1981).[11]

The Supreme Court of Ohio, in *Hoyt v. Hoyt,* 53 Ohio St.3d 177, 559 N.E.2d 1292 (Ohio 1990), pointed out that in making an equitable division of pension plans in conjunction with a divorce, the court must determine

> whether a direct division, or some other alternative, would be most appropriate to preserve the pension or retirement asset so that each party may derive the most benefit ... such as an immediate offset or a current assignment of proportionate shares, with either a current distribution or a deferred distribution.

53 Ohio St.3d at 181, 559 N.E.2d at 1297. One court noted that decisions pursuant to legislation comparable to Ohio's

> have almost without exception held that vested pension or profit-sharing interests earned during marriage should be included among the property divided between the spouses upon divorce. The rationale for these decisions is that pension or profit-sharing payments are deferred compensa-

tion earned during the marriage and, therefore, the right to such payments should be treated as property acquired during the marriage.

*Bohnlein v. Bohnlein,* 11 Ohio Misc.2d 16, 463 N.E.2d 666, 667 (Com.Pl.1983).

Although the Ohio domestic relations statute does not use the terminology "creation of separate interests", such a result nevertheless is compatible with the statute and case law. The statute makes a distinction between creation of separate interests and creation of a claim. *See generally* Ohio Rev. Code § 3105.171, (E)(2), (F). Ohio case law appears to favor the creation of an ownership interest over creation of a claim. For example, an ex-spouse can be awarded a separate ownership interest in a fireman's pension, notwithstanding an Ohio statute that protects pensions of police and fire personnel from attachment by creditors, because the spouse is a co-owner. *Erb v. Erb,* 1993 WL 264806, at *4, *5 (Ohio Com.Pl., May 5, 1993), *aff'd* 1994 WL 245676 (Ohio App., 8 Dist., *appeal allowed* 71 Ohio St.3d 1406, 641 N.E.2d 203 (1994); Ohio Rev.Code § 742.47. An Ohio bankruptcy court has recognized the co-ownership principle and that separate property interests are created upon an award of a public employee's retirement benefit in a pre-bankruptcy divorce proceeding, notwithstanding that enjoyment of the funds is postponed because the pension is not payable at the time of the award. *In re Wilson,* 158 B.R. 709 (Bankr.S.D.Ohio 1993). In *Wilson* the court held that a prepetition $11,000 award to the ex-wife of assets in Debtor's retirement fund was her sole and separate property. Even though the funds were still held by the Ohio Public Employees Retirement System in Debtor's name, the court found that the divorce decree did not create a debt and, therefore, the ex-wife's equitable interest in the fund was neither part of Debtor's bankruptcy estate nor subject to the jurisdiction of the bankruptcy court. 158 B.R. at 711. In *Wilson* the debtor was not eligible to receive the pension benefits at the time of the state court award to the ex-

---

11. "It is immaterial that, at the time of a divorce, ... a spouse has started receiving the benefits in the form of periodic income. The plan nonetheless constitutes marital assets, and the benefits therefrom belong to the marital estate and not to the receiving spouse exclusively." *Holcomb v. Holcomb,* 44 Ohio St.3d 128, 132, 541 N.E.2d 597, 600 (Ohio 1989).

spouse. However, the bankruptcy court concluded that, upon eligibility for distribution, the state court would consider the debtor to be the trustee of the ex-wife's assets, i.e., her separate property interest in the pension fund. In the matter before us, distribution commenced within four months after the state court award and about three months before the bankruptcy was filed. When the Pension Trustee pays the monthly benefit to Debtor and Mrs. Debolt, it is distributing separate property to each.

 The policy of Ohio law was clearly stated in *Hoyt v. Hoyt*, 53 Ohio St.3d 177, 559 N.E.2d 1292 (1990). The Ohio Supreme Court cited with approval the goal of disentangling the economic relationship of the parties in divorce cases so that the rights and obligations of each vis-a-vis the other are extinguished. *Hoyt v. Hoyt*, 559 N.E.2d at 1298. The purpose is to "create a conclusion and finality to their marriage". *Id.* at 1295. When the only significant marital asset is a pension, division of the asset usually is required in order to structure equitable division of property. *Id.* at 1298.[12] Inasmuch as a claim or right to payment gives rise to an obligation on behalf of Debtor, *Pennsylvania Dept. of Public Welfare v. Davenport*, 495 U.S. 552, 559, 110 S.Ct. 2126, 2131, 109 L.Ed.2d 588 (1990), this "objective to disentangle" is best accomplished through an award of a separate interest rather than a claim against Debtor's interest. *See Hoyt v. Hoyt*, 559 N.E.2d at 1300.

Ohio law also emphasizes procuring the most benefit to each party in structuring a division of a pension while preserving the fund. *Hoyt v. Hoyt*, 559 N.E.2d at 1298. Construing the award to Mrs. Debolt in this case as a dischargeable claim rather than a property division would violate the policies of the Ohio domestic relations law and negate the intent of the state court. *Cf. Caudill v. Everett*, 1993 WL 169158 (Ohio App. 3 Dist., May 10, 1993) (court unwilling to negate equitable division of marital debts as agreed

to by parties). This court, similarly, has no basis upon which to negate the intention of a state court that divided the marital assets. To classify Mrs. Debolt's award as a claim would have that effect. It also would violate the policy of Ohio law, see *Hoyt, supra,* and the intention of the state court as expressed in the judgment of divorce when it provided that Mrs. Debolt was "awarded an interest" in Debtor's pension. Another indication that a separate property interest was created is the QDRO's provision that, if Mrs. Debolt predeceases Debtor, she may name her estate as beneficiary of her interest "if the plan so permits". Whether or not the plan permits, and there is nothing in the record indicating a prohibition against such a provision, the language of the state court clearly illustrates its intent to create a separate property interest in Mrs. Debolt.

The issue of separate property interests derived from divorce judgments also arises in cases concerning military pensions. In *McCarty v. McCarty*, 453 U.S. 210, 101 S.Ct. 2728, 69 L.Ed.2d 589 (1981), the United States Supreme Court held that the supremacy clause of the United States Constitution prohibited state courts from dividing military nondisability retirement pay on divorce pursuant to state community property laws. In response, Congress enacted the Uniform Services Former Spouse's Protection Act in 1982. *See* 10 U.S.C. § 1408. Section 1408 provides that a court may treat disposable military retirement pay "either as property solely of the member or as property of the member and his spouse in accordance with the law of the jurisdiction of such court." 10 U.S.C. § 1408(c)(1). In *In re Farrow*, 116 B.R. 310 (Bankr.M.D.Ga.1990), the bankruptcy court held that the military pension awarded to the ex-wife in state court was nondischargeable based on alternative grounds: (1) because her share constituted her sole and separate property, or (2) because the debtor-husband held the funds in constructive trust for her. *See also Matter*

---

**12.** In the case at bar, the marital residence also provided cash to the Debolts after it was sold. The proceeds were used first to pay obligations of the parties with the balance being divided between them. *See* divorce decree, Exhibit 1 to Debtor's Motion for Summary Judgment. The

amount of the balance is not of record in these adversary proceedings and is disputed. *See* ¶¶ 15–17 of the amended complaint (Docket No. 13) and answer thereto (Docket No. 14) at Adversary 93–2552.

*of Sadowski,* 144 B.R. 566 (Bankr.M.D.Ga. 1992) (award of debtor's military retirement benefits was ex-spouse's sole and separate property).

Enactment of the Uniform Services Former Spouse's Protection Act has inspired some courts to treat the equitable division of civilian pensions like military pensions. *In re Stolp,* 116 B.R. 131, 133 (Bankr.W.D.Wis. 1990) ("a military pension is not different from a private pension plan and accordingly may be divisible as jointly acquired property") (citation omitted). Courts have held that this treatment of equitable division of non-military pensions may "guarantee that the Nation's private retirement-income system provided fair treatment for women." *Bush v. Taylor,* 912 F.2d 989, 994 (8th Cir. 1990) (quoting *Mackey v. Lanier Collections Agency and Serv.,* 486 U.S. 825, 838, 108 S.Ct. 2182, 2189, 100 L.Ed.2d 836 (1988)). One court expressed its "doubt that Congress ever intended that a former wife's judicially decreed sole and separate property interest in a pension payable to her former husband should be subservient to the Bankruptcy Code's goal of giving the debtor a fresh start." *Bush v. Taylor,* 912 F.2d at 994.

We note that, in large part, Debtor created his present circumstances. Debtor took early retirement shortly after the divorce and award to Mrs. Debolt of a 50 percent interest in the pension. Distributions to Mrs. Debolt began in August and in October Debtor filed the instant bankruptcy. Mrs. Debolt is the only creditor addressed in the plan and it is apparent that the purpose of this bankruptcy is to avoid the effect of the Ohio orders. Although the Bankruptcy Code is designed to facilitate relief from burdensome debts, a debtor "is not entitled to manipulate the legal system in order to exercise such absolute control in derogation of the state court's decree." *In re Long,* 148 B.R. 904, 910 (Bankr.W.D.Mo.1992). In light of the statutory and case law cited herein addressing protection of the non-employee spouse's in-

terests, this is particularly true when the decree in question issues in a divorce proceeding *Cf. In re Huckfeldt,* 39 F.3d 829 (8th Cir.1994) (non-economic motive for filing bankruptcy amounting to bad faith is cause for dismissal under 11 U.S.C. § 707(a) when chapter 7 was filed by ex-husband to defeat award made in divorce decree and he manipulated his earnings to ensure his goal).

In *In re Long,* 148 B.R. 904 (Bankr. W.D.Mo.1992), the debtor filed an appeal from the state court's decree then filed the bankruptcy before a QDRO could be entered. The court held, *inter alia,* that a nondebtor spouse's "right to obtain entry of the QDRO is not a dischargeable debt, but is in the nature of a property interest." 148 B.R. at 907. The court determined that the state court order did not create a debtor-creditor relationship between the spouses. The case concerned Missouri law which is similar to Ohio's in that an interest in a pension is marital property subject to division upon divorce. *See In re Long,* 148 B.R. at 908.

█ In Ohio, as in Missouri, a court order dividing a pension may divest the participant of the interest awarded to the ex-spouse. *Id.;* Ohio Rev.Code § 3105.171(E)(1). In the matter before us, the division was made by the Ohio state court pre-bankruptcy. When Debtor filed his chapter 13, Mrs. Debolt's interest in the pension was her sole and separate property and did not become property of Debtor's bankruptcy estate.[13] *See also In re Abbata,* 157 B.R. 201, 205 (Bankr.N.D.N.Y.1993) (cites *Long* and recognizes the proposition that a QDRO "constitutes a recognition of the non-employee spouse's ownership interest in a portion of the retirement benefits that were earned during the marriage.")

In *Farrey v. Sanderfoot,* 500 U.S. 291, 111 S.Ct. 1825, 114 L.Ed.2d 337 (1991), the United States Supreme Court looked to state law to determine whether the ex-spouse's lien on property divided by the state court in a divorce proceeding had attached to an inter-

---

**13.** The court in *Long* stated in the alternative that the debtor held the pension interest of the ex-spouse in constructive trust because ERISA expressly provides for division of pension interests through QDROs and because constructive trusts

are appropriate when title to property is held by a party who should not retain it. *In re Long,* 148 B.R. at 909. In the matter at hand, however, it is clear that separate property interests were created.

est of the debtor in property for purposes of 11 U.S.C. § 522(f). The Court held that, under Wisconsin law, the debtor had acquired his new interest with the ex-spouse's lien already attached. Therefore, the lien could not be avoided as impairing an exemption under § 522. In the instant case, the Ohio court created new interests before the bankruptcy was filed. This conclusion is supported by Ohio statute, case law, and the terms of the court's orders, particularly the provision that Mrs. Debolt may name her estate as beneficiary of her interest in the pension if she predeceases Debtor. Thus, when Debtor filed his bankruptcy petition, he had no interest in the portion of the pension that the state court awarded to Mrs. Debolt as her separate property.

Debtor argues that, although the plan terms address QDROs, they do not provide for changes in ownership of plan benefits. This argument is specious. The Internal Revenue Code defines a domestic relations order as

> any judgment, decree, or order (including a property settlement agreement) which—
>> (i) relates to the provision of child support, alimony payments, or marital property rights to a spouse, former spouse, child, or other dependent of a participant, and
>> (ii) is made pursuant to a State domestic relations law (including a community property law).

26 U.S.C. § 414(p)(1)(B). A qualified domestic relations order is a domestic relations order

> (i) which creates or recognizes the existence of an alternate payee's right to, or assigns to an alternate payee the right to, receive all or a portion of the benefits payable with respect to a participant under a plan, and
> (ii) with respect to which the requirements of paragraphs (2) and (3) are met.[14]

26 U.S.C. § 414(p)(1)(A). As discussed above, Ohio state law provides for division of pension interests in a manner not "inconsistent with the law, rules, or plan governing

the ... program involved". Ohio Rev.Code § 3105.171(C)(4). The pension plan involved in this case provides no express or implied prohibition against alteration of ownership interest as long as a QDRO exists which is **"within the meaning of Section 414(p) of the [Internal Revenue] Code"**. *See* Benefit Plan at 80, Article V, Section 11 (emphasis in original). The state court's order in this case complies with state and federal law and the terms of the pension plan at issue. The award of a separate interest to Mrs. Debolt is lawful. Therefore, to the extent that Debtor contends that payment to Mrs. Debolt of her separate interest violates the stay, his argument is rejected.

### III. *Violation of Automatic Stay*

Section 362 of the Bankruptcy Code, 11 U.S.C., effectuates an automatic stay with the bankruptcy filing. The stay prohibits creditors from pursuing a debtor for any outstanding pre-petition claims, thereby providing respite from the pressure of creditors. It also facilitates an orderly administration and distribution of bankruptcy estate assets. *See In re Zunich*, 88 B.R. 721, 723 (Bankr. W.D.Pa.1988).

Debtor contends that payment of support to Mrs. Debolt from Debtor's portion of the pension violates the stay. The existence of a violation of the stay in this case depends on whether the support payments are coming from property of Debtor's bankruptcy estate. Because "property of the estate" differs under the various chapters of the Bankruptcy Code, we analyze this issue only as it arises in this chapter 13 case. In chapter 13 cases,

> (a) Property of the estate includes, in addition to the property specified in section 541 of this title—
>> (1) all property of the kind specified in such section that the debtor acquires after the commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7, 11, or 12 of this title, whichever occurs first....

---

**14.** The subparagraphs relate to the specification of certain facts in the order and a prohibition against altering the benefits available under the plan in violation of the terms of the plan.

11 U.S.C. § 1306(a)(1). Section 541 provides that property of the estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case" except as stipulated in subsections (b) and (c)(2) of that section. 11 U.S.C. § 541(a)(1). In *Patterson v. Shumate*, —— U.S. ——, 112 S.Ct. 2242, 119 L.Ed.2d 519 (1992), the United States Supreme Court held that, pursuant to 11 U.S.C. § 541(c)(2), a debtor may "exclude from property of the estate any interest in a plan or trust that contains a transfer restriction enforceable under any relevant nonbankruptcy law." —— U.S. at ——, 112 S.Ct. at 2246. Debtor's interest in the pension plan involved in the instant matter falls within this exclusion. As long as the money that is subject to Debtor's half interest remains in the pension fund the anti-alienation restriction of the plan applies. However, once the Debtor's portion is distributed to him, it no longer is subject to the restriction. *Velis v. Kardanis*, 949 F.2d 78 (3d Cir.1991) (rehearing denied). When the funds are separated from the corpus via distribution, no enforceable restrictions exist to prohibit treating the funds as part of the bankruptcy estate. *Id.* at 83.[15] In a chapter 13, those distributed funds become estate property and cannot be paid to satisfy even a nondischargeable debt during the pendency of the bankruptcy absent an appropriate order of the bankruptcy court. Upon notice of Debtor's bankruptcy, therefore, the Pension Trustee should have ceased remitting Mrs. Debolt's support payments from Debtor's share of the pension. Accordingly, notwithstanding Debtor's nondischargeable obligation to pay support, the Pension Trustee could not effectuate the state court order with respect to the support obligation absent relief from stay from this bankruptcy court. Nevertheless, damages for violation of the stay are to be awarded only the violation is willful, injury occurs, and the injured party suffers actual damages. 11 U.S.C. § 362(h). We first turn to the question of whether this violation was "willful."

In *In re Atlantic Business and Community Corp.*, 901 F.2d 325 (3d Cir. 1990), the Court of Appeals for the Third Circuit held that a mere possessory interest in property is subject to the automatic stay. 901 F.2d at 328. In *Atlantic Business*, the debtor's landlord, with knowledge of the stay, attempted to repossess the property and evict the debtor, even after the trustee obtained a restraining order. The court held that an act in violation of the stay is willful when the defendant knew of the stay and his actions were intentional. A good faith belief that the defendant possessed a right to the property at issue is irrelevant to the determination of whether the violation of the stay was willful. *Id.* at 329.

Under *Atlantic Business*, the Pension Trustee in the case before us committed a willful violation of the stay. It was notified of the bankruptcy case and the existence of the stay but continued to distribute support payments to Mrs. Debolt from Debtor's portion of the pension. In this regard, we recognize that *In re University Medical Center*, 973 F.2d 1065 (3d Cir.1992) (rehearing denied), seemed to limit *Atlantic Business*, albeit in a narrow respect. In *University Medical Center*, the Secretary of Health and Human Services (HHS) was determined not to have violated the stay by withholding payments for postpetition Medicare services in an effort to recover prepetition provider reimbursement overpayments because the applicable Medicare law was sufficiently uncertain that the Department could reasonably have believed that its actions were in accordance with the automatic stay. Unlike HHS in *University Medical Center*, the Pension Trustee in the matter before us is not faced with uncertainty in the law and, therefore, the payment of support from Debtor's portion of the pension fund constitutes a willful violation of the stay.

Nonetheless, we will not award punitive damages on this occasion. Despite the technical violation of the stay, we find no evidence on this record of injury or actual damage to Debtor inasmuch as the support obli-

---

**15.** *Velis v. Kardanis* remains the law of this circuit even after *Patterson v. Shumate*. *See Trucking Employees of North Jersey Welfare Fund, Inc. v. Colville*, 16 F.3d 52 (3d Cir.1994). Our re-

search has disclosed no opinions dealing with this point in the Ohio state or bankruptcy courts nor in the Sixth Circuit and the parties have not referred us to any.

gation is nondischargeable and Debtor is in no position different from that he would have been in absent bankruptcy. Unlike the landlord in *Atlantic Business*, the Pension Trustee in this case has no financial self-interest to be furthered by its conduct.[16] Moreover, in some situations, the Court of Appeals for the Third Circuit has indicated that an "annulment" of the stay is appropriate, although no request to annul the stay has been made in this case. *See In re Siciliano*, 13 F.3d 748 (3d Cir.1994).

The current procedural posture of this case does not lend itself to the entire resolution of the support issue. The support obligation is being paid by the Pension Trustee from Debtor's half interest in the pension. That half interest constitutes property of the bankruptcy estate. Therefore, the Pension Trustee is in violation of the stay in paying the support to Mrs. Debolt, notwithstanding the fact that it is doing so in compliance with a prepetition state court order and that the obligation is nondischargeable.

Debtor's half interest, as he admits, is insufficient to meet his current support obligations and he has no other income. The plan proposes to pay only $105 per month towards arrears, but the arrears will continue to accrue, initially, in the amount of approximately $400 per month. These facts raise issues of whether the bankruptcy was filed in good faith, whether the plan is feasible, and whether it represents Debtor's best efforts due to his early retirement, which created his current financial condition. Of

course, we reach no conclusions as to any of these issues on this record. We merely recognize that they must be addressed so as to assess the appropriate remedies for all parties.

In light of the facts as they are known to us at this time, we will give the Pension Trustee and/or Mrs. Debolt 30 days to file a motion for relief from stay or other appropriate pleading. Within this 30 day period, Debtor may pursue relief from or modification of his support obligation in the state court, if he deems it appropriate. During this period, Pension Trustee shall continue to make the support payments to Mrs. Debolt. If, at the end of the 30 day period, no party has taken any action to present the issues that need to be addressed in a litigable fashion, the Pension Trustee will be ordered to cease making support payments to Mrs. Debolt and the plan confirmation process shall go forward. If an action is filed within the next 30 days, Pension Trustee shall continue paying the support to Mrs. Debolt until the action is adjudged or another order is entered.

██ In lieu of damages against the Pension Trustee, the Pension Trustee and Mrs. Debolt will be given a brief period in which to pursue relief from stay or other action. Failing appropriate action by either or both, the Pension Trustee will be ordered to cease making payments in violation of the Bankruptcy Code.[17]

An appropriate order will be entered.[18]

**16.** Compare *Atlantic Business* where, despite the restraining order, the landlord's conduct caused the trustee to shut down the business to avoid the risk of injury to the debtor's employees that was posed by the landlord's threatened conduct to prevent access·to the premises. The Court of Appeals held that the landlord had willfully violated the stay and that the imposition of punitive damages, attorney's fees, and costs by the bankruptcy court was not clearly erroneous under the circumstances.

**17.** Debtor is not relieved of his obligation to make the support payments. Payment of ongoing support is required in chapter 13 cases inasmuch as debtors need commit to the plan only their "disposable income" which is computed after expenses for the support of debtors and their dependents are deducted from income. 11

U.S.C. § 1325(b)(2). Debtor's plan does not address current payments toward support, only arrears. Although not applicable to this case, the 1994 Amendments create a priority for support arrears, thereby evidencing Congressional intent to require chapter 13 debtors to pay support arrears in full over the life of the plan.

**18.** The proof of claim filed by the trustee for Mrs. Debolt on support arrearages is in the amount of $105.00 per month, the amount provided in the plan. Thus, assuming that Debtor makes the payments required by the plan, Mrs. Debolt's distribution in Class II will be limited to that amount unless she files an amended proof of claim and the plan is amended. Debtor has claimed an exemption in the pension. In addition, another creditor (Household Bank) which was not listed in the schedules or plan has filed a

## JUDGMENT ORDER

And now, to-wit, this **23rd** day of **December, 1994,** for the reasons set forth in the foregoing Memorandum Opinion, it is **ORDERED, ADJUDGED AND DECREED** that

(1) At Adversary 93–2552 summary judgment for Defendant Mary L. Debolt is **GRANTED** as to Counts I and II of the Amended Complaint and the approximate 50 percent interest in the Ford–UAW Retirement Plan awarded to Mrs. Debolt by the Ohio state court is declared to be her sole and separate property. Further, her property interest is not a debt, is not dischargeable, and is not an avoidable judicial lien. Debtor's motion for summary judgment is **DENIED.** Judgment is entered against Debtor and in favor of Mrs. Debolt on Counts I and II of Adversary 93–2552.

Regarding Count III of the amended complaint at Adversary 93–2552, a pretrial telephonic status conference shall be held on **January 19, 1995,** at **10:00 a.m.** in Room 1112, Federal Building, 1000 Liberty Avenue, Pittsburgh, Pennsylvania. Messrs. Olds and Kishman shall be available by telephone. The Court shall place the telephone call. If any other counsel or parties wish to participate, they shall notify the Court in writing of their telephone numbers by January 10, 1995.

(2) At Adversary 94–2002, the motion to dismiss filed by Comerica Bank and Ford–UAW Retirement Plan (referred to in the foregoing Memorandum Opinion as "Pension Trustee") is **DENIED.**

(3) At Adversary 94–2002, regarding Mrs. Debolt's property interest in the pension, it is **FURTHER ORDERED** that Debtor's motion for summary judgment against Pension Trustee is **DENIED** with respect to Mrs. Debolt's sole and separate property interest in the pension fund. It is **FURTHER ORDERED** that, in compliance with the QDRO, Pension Trustee shall distribute to Mrs. Debolt her approximate 50 percent interest in the pension fund which constitutes her sole and separate property.

(4) At Adversary 94–2002, regarding Debtor's remaining property interest in the pension, it is **FURTHER ORDERED** that the portion of Debtor's motion for summary judgment that addresses past violations of the automatic stay by the Pension Trustee is **DENIED.**

(5) At Adversary 94–2002, regarding Debtor's remaining property interest in the pension, it is **FURTHER ORDERED** that the portion of Debtor's motion for summary judgment that addresses future violations of the automatic stay by Pension Trustee is **GRANTED** to the extent that, within thirty (30) days hereof, the Pension Trustee and/or Mrs. Debolt shall file a motion for relief from stay or other appropriate action with respect to the support payments. During this period the Pension Trustee shall continue making support payments to Mrs. Debolt from Debtor's interest in the pension.

It is **FURTHER ORDERED** that, if no motion is filed within the next 30 days, on the 31st day herefrom, the Pension Trustee shall be and is enjoined from making and shall cease payment of support to Mrs. Debolt from Debtor's interest in the pension. If a motion is filed within 30 days´hereof, the injunction against Pension Trustee shall not take effect and Pension Trustee shall continue payments of support to Mrs. Debolt until further Order.

It is **FURTHER ORDERED** that the Clerk of the Bankruptcy Court shall close Adversary 94–2002 but not Adversary 93–2552.

proof of unsecured claim for a small amount ($240.26). It is not clear how this plan is adequately funded based upon Debtor's continuing arrearage accrual for on-going support and the plan requirement to contribute to prepetition spousal support arrearages (the amount of which is disputed). However, all issues of feasibility, good faith filing, best efforts and distribution will be decided in the plan confirmation process, once the amounts of the claims are fixed.