JERRY C. WILSON v. SHIRLEY DENNY WILSON

No. 8418DC256

(Filed 19 February 1985)

1. **Divorce and Alimony § 30— equitable distribution—property acquired after separation—not marital property**

   In an action for equitable distribution where the parties separated in 1975, the action for divorce began in 1982, and judgment was entered in October 1983, the 1 August 1983 amendment to G.S. 50-20(b)(1) applied, so that property purchased with money earned or acquired after the separation date was not marital property. The 1981 version of the statute, which defined marital property as property acquired during the course of the marriage, created a right to the equitable distribution of property, not a vested right to particular property.

2. **Divorce and Alimony § 30— equitable distribution—property acquired after separation—findings not supported by evidence**

   In an action for divorce and equitable distribution in which plaintiff husband refused to cooperate in determining marital property and introduced no evidence, the court erred by finding that assets were marital property because they were acquired before the divorce. The inquiry should be whether the property was acquired before the parties' separation, and statutory provisions punishing misconduct are appropriate if plaintiff continues to obstruct the resolution of the case. G.S. 1A-1, Rule 37(b), G.S. 5A-11 *et seq.* (1981), G.S. 50-20(i).

APPEAL by plaintiff from *Bencini, Judge.* Judgment entered 4 October 1983 in District Court, GUILFORD County. Heard in the Court of Appeals 15 November 1984.

The plaintiff, Jerry C. Wilson, and the defendant, Shirley Denny Wilson, married on 30 March 1973. Plaintiff was a licensed attorney who practiced in High Point until approximately December, 1974. On or about 20 September 1974, the plaintiff borrowed the sum of $15,992.40 from the North Carolina National Bank. He and the defendant gave a promissory note for the loan. In December 1974 the plaintiff left North Carolina. He subsequently defaulted on repayment of the loan and the Bank obtained a recovery against the defendant of $15,830.54.

In January, 1975, the plaintiff and defendant contracted with Central Trane Air Conditioning Company for the installation of an air conditioning system at the High Point residence, then occupied only by defendant. The Company required the parties to

execute an Affidavit and Confession of Judgment for its use in the event of default. Plaintiff informed defendant he would pay for the installation of the air conditioning system, which he did not, and defendant was left liable under the Confession of Judgment.

After plaintiff left North Carolina, he contacted defendant and told her not to institute divorce proceedings since so long as they were married defendant could not be forced to testify against plaintiff in the event of disbarment proceedings against him. The parties agree in the pleadings that they were separated on 1 July 1975.

In a letter dated 27 July 1982, the plaintiff informed defendant he would hold her harmless for judgments docketed against her in the North Carolina National Bank and Central Trane Air Conditioning Company collection matters. He has failed to do so. In the same letter, plaintiff acknowledged that he had agreed to assist defendant in the purchase of a residence. Defendant alleges that plaintiff submitted a financial statement regarding his personal worth to Brown Realty Company of Greensboro, for consideration incident to the proposed purchase of the residence for defendant.

Plaintiff filed an action for absolute divorce, based on a one-year separation, on 24 July 1982. The defendant filed an answer and counterclaim for absolute divorce and equitable distribution of marital property on 28 July 1982. On 2 September 1982, the parties were granted a judgment of absolute divorce.

The defendant's counterclaim for equitable distribution came on for trial on 27 September 1983. Prior to trial, defendant submitted two discovery requests to plaintiff, which he failed to answer, despite court orders to comply. Plaintiff did not appear at the trial. The trial judge entered judgment on 4 October 1983, requiring plaintiff to pay a distributive award to defendant and enjoining plaintiff from transferring or encumbering certain stock until the award was paid. Plaintiff appeals the judgment.

*Purser, Cheshire, Manning & Parker, by Barbara A. Smith, for plaintiff appellant.*

*Tuggle Duggins Meschan & Elrod, by David F. Meschan and Henry B. Mangum, Jr., for defendant appellee.*

ARNOLD, Judge.

The plaintiff contends that the trial court erred in finding and concluding that plaintiff's stock in Jefferson Jazz, Inc., and his real property in Cabarrus County are marital property within the meaning of the Equitable Distribution Act. The plaintiff argues that such property was acquired after the separation of the parties, and that therefore under G.S. 50-20(b)(1), as amended in 1983, it is not "marital property."

[1] We first deal with the legal question of the application of G.S. 50-20(b)(1) to this case. The Equitable Distribution Act went into effect on 1 October 1981. Sess. Laws 1981 c. 815 s. 7. In the original text of the statute, "marital property" was defined as:

[A]ll real and personal property acquired by either spouse during the course of the marriage and presently owned, except property determined to be separate property in accordance with subdivision (2) of this section.

G.S. 50-20(b)(1) (1981 Cum. Supp.).

Because the phrase "in the course of the marriage" was vague, see Sharp, Equitable Distribution of Property in North Carolina: A Preliminary Analysis, 61 N.C. L.R. 247, 251-52 (1983) (discussing problems in interpreting this section), the legislature amended the definition of "marital property" to read:

"Marital property" means all real and personal property acquired by either spouse or both spouses during the course of the marriage and before the date of the separation of the parties, and presently owned . . . .

G.S. 50-20(b)(1) (1983 Cum. Supp.) (emphasis added).

The statute adding the language "and before the date of the separation of the parties" provided that the amendment should be effective 1 August 1983, and that it was applicable to actions pending in the District Court Division at that time. Sess. Laws 1983 c. 640 s. 3.

The present action commenced in July 1982 and did not reach trial until 27 September 1983. The judgment of equitable distribution was entered 4 October 1983. This case was pending on 1 August 1983, and under the terms of the 1983 legislation the

amended version of the definition of "marital property" should apply to it.

Defendant argues, however, that the August 1983 amendment is unconstitutional to the extent it retrospectively excludes certain property from being marital property in actions filed before the effective date of the amendment. Defendant argues that G.S. 50-20(k), which says that "[t]he rights of the parties to an equitable distribution of marital property are a species of common ownership, the rights of the respective parties vesting at the time of the filing of the divorce action," vests in her rights to particular marital property acquired after the date of separation, which cannot be removed by subsequent statutes with retroactive effect.

We cannot agree that G.S. 50-20(k) created substantive rights in any party to particular marital property which that party argues comes within the meaning of "acquired . . . during the course of the marriage." The legislature's intent in subsection k was to create *a right to equitable distribution* of the marital property, which had not existed up to that time, and to make that right vest at the time of filing for divorce. Subsection k did not create any vested rights in *particular marital property*; it created a right to the equitable distribution of that property, whatever a court should determine that property is.

Given the ambiguity in the phrase "in the course of the marriage" in the 1981 statute, the defendant had no reason to rely on the statute as establishing any particular point as the cut-off date for valuation of the marital property. The legislature clarified the meaning of the statute on 1 August 1983, well before the trial of the present case, which occurred 27 September 1983. If the plaintiff purchased the Jefferson Jazz stock and the Cabarrus County property with money earned or acquired after the separation date, they are not marital property.

[2] We now consider the evidence before the trial judge and his classification of the parties' property. We note, however, that the source of much difficulty in this case is plaintiff's refusal to cooperate in the effort at the trial level to determine what is the parties' marital property. He failed to respond to two court-ordered discovery requests, and he failed to participate at trial. The only evidence before the trial judge was supplied by defendant.

This evidence indicated, and the trial court so found, that the parties separated on or about 1 July 1975. The evidence indicated also, and the trial judge found, that the plaintiff acquired an interest in certain real property in Cabarrus County on 30 October 1981. The trial judge concluded that this property was acquired "during the marriage of plaintiff and defendant." In that it was acquired after the parties' separation, however, the property is not marital property. This assumes, of course, that the property was not acquired through the exchange of marital funds or property.

On the basis of financial statements submitted by the defendant, the trial judge also concluded that plaintiff acquired a 50% interest in a company called Jefferson Jazz, Inc. The trial judge concluded that this interest also was marital property. The defendant's testimony shows that she did not know when plaintiff started Jefferson Jazz, but that plaintiff had been talking about the company for four years prior to trial, and that he acquired the interest prior to the parties' divorce. The plaintiff has submitted no evidence whatsoever as to when he acquired the interest in Jefferson Jazz. Yet, he argues that defendant's testimony indicates that plaintiff acquired Jefferson Jazz stock no more than four years prior to trial, in 1979, which was approximately four years after the parties' separation. We find defendant's testimony, however, inconclusive on the question of exactly when plaintiff acquired Jefferson Jazz.

The record and the trial judge's findings indicate that the trial judge concluded that the Jefferson Jazz interest was marital property because the parties acquired it prior to their divorce. Under the statute as amended, this reasoning was clearly erroneous. The trial judge should have asked whether the property was acquired before or after the parties' separation. As noted above, the evidence in the record is inconclusive on this question. The lack of information in the record concerning the origins of Jefferson Jazz is largely the result of plaintiff's refusal to respond to defendant's discovery requests and failure to appear at trial.

Because the trial judge failed to apply the amended version of the statute to the facts before him and because the evidence is insufficient to support his judgment, we remand for retrial in accordance with this opinion. If the plaintiff continues to obstruct

the resolution of this case, the trial judge should utilize statutory provisions for punishing such misconduct. *See* G.S. 1A-1, Rule 37(b) of the Rules of Civil Procedure; G.S. 5A-11 *et seq.* (1981); *see also Wade v. Wade*, slip op. No. 8415DC52 at 5-6 (N.C. App. February 5, 1985).

The trial court entered an order of preliminary injunction on 2 September 1982 to restrain plaintiff from dissipating the alleged marital property until an equitable distribution of the property could be made. The Equitable Distribution Act authorizes such an order. G.S. 50-20(i). Given plaintiff's conduct, continuance of this order during retrial would not be error.

Since we have ordered a retrial, we do not deem it necessary to address plaintiff's other contentions.

Vacated and remanded.

Judges WELLS and BECTON concur.