**In re Richard L. HALVERSON, Debtor.**

**Richard L. HALVERSON,**
**Plaintiff/Appellant,**

**v.**

**Judith B. HALVERSON,**
**Defendant/Appellee.**

**Bankruptcy No. B–91–11384C–11.**
**Adv. No. A–91–2114.**
**Civ. No. 2:92CV00342.**

United States District Court,
M.D. North Carolina,
Greensboro Division.

Feb. 22, 1993.

MEMORANDUM OPINION

BULLOCK, Chief Judge.

This matter is before the court on appeal from a final judgment entered by the United States Bankruptcy Court for the Middle District of North Carolina on May 4, 1992, granting summary judgment for Appellee, Judith B. Halverson. The bankruptcy court decreed that Judith Halverson has a secured claim against her former husband's personal property as evidenced by the lien upon all marital property entered in a prior equitable distribution proceeding in state court. The district court has jurisdiction to determine appeals from final judgments, orders, and decrees issued by the bankruptcy court pursuant to 28 U.S.C. § 158(a).

For the reasons stated in this memorandum opinion, this court finds that Judith Halverson must be classified as a general unsecured creditor with respect to Appellant/Debtor Richard L. Halverson's personal property.

I.

Judith and Richard Halverson separated on March 29, 1985, after more than twenty years of marriage. On August 20, 1986, absolute divorce was granted. In December 1990, an equitable distribution action between the parties was tried in the District Court Division of the General Court of Justice, Forsyth County, North Carolina, and on January 17, 1991, the state court entered its Equitable Distribution Judgment.

The Equitable Distribution Judgment, in pertinent part, provided for the distribution of marital property and also made a distributive award to Judith Halverson as follows:

6. That [Judith B. Halverson] have and recover judgment against [Richard L. Halverson] in the amount of $2,054,-389.61 plus interest at the rate of eight percent (8%) per annum from December 10, 1990 (the date the trial court announced its decision in open court), through the 17th day of January, 1991 (the date that interest begins to accrue

R. Bradford Leggett, Allman Spry Humphreys Leggett & Howington, P.A., Winston–Salem, NC, for appellant.

John A. Northen, Northen, Blue, Little, Rooks, Thibaut & Anderson, Chapel Hill, NC, for appellee.

on the promissory note being ordered as part of the distributive award;

7. That [Richard L. Halverson] be, and is hereby ordered to pay, the before mentioned Judgment to [Judith B. Halverson] as follows:

(a) $750,000.00 plus the before mentioned accrued interest at eight percent (8%) per annum not later than January 17, 1991;

(b) not later than January 17, 1991, [Richard L. Halverson] is to execute a promissory note payable to [Judith B. Halverson] and which includes the following terms and conditions: (1) the principal amount payable under said note shall be $1,304,389.61; (2) the interest rate under said note shall be the prime rate of interest charged by the Southern National Bank as of January 17, 1991 plus one-half percent; this interest rate shall be adjusted quarterly during the term of the note with the quarters being April 1, July 1, October 1 and January 1; and (3) the principal amount of $1,304,-389.61 shall be paid, with the interest accrued at the time of each principal payment, in ninety-six (96) equal and consecutive monthly payments with the first payment being due and payable February 17, 1991;

(c) [Richard L. Halverson] be, and is hereby enjoined and ordered not to dispose of, borrow against, pledge, or otherwise encumber in any manner any of his personal or business assets except as is necessary to pay the monies owed to [Judith B. Halverson] on or before January 17, 1991;

8. By this Judgment, [Judith B. Halverson] is hereby ordered to have as security for the payment of said Judgment and the monies and promissory note contained therein a lien on any and all assets of any sort, kind or nature of [Richard L. Halverson]; and [Richard L. Halverson] be, and is hereby ordered to execute any and all documents and paper writings necessary to fully secure said [Judith B. Halverson]....

During the marriage, Richard Halverson had obtained franchises from McDonald's Corporation for the purpose of operating six McDonald's restaurants. On January 22, 1991, Judith Halverson requested the issuance of a writ of execution from the Forsyth County Clerk of Superior Court. On March 19, 1991, representatives of the Sheriff of Forsyth County, acting pursuant to the writ of execution, seized and padlocked two McDonald's restaurants which were operated by Richard Halverson under the franchise agreement with McDonald's Corporation. In response to that action, Southern National Bank seized a number of Richard Halverson's assets which were encumbered by a senior lien in its favor.

McDonald's Corporation immediately rescinded one of the McDonald's franchises. On March 22, 1991, Richard Halverson filed a Chapter 11 proceeding with the United States Bankruptcy Court for the Middle District of North Carolina. Later that day, McDonald's Corporation delivered a Notice of Termination of the remainder of the McDonald's franchises.[1]

## II.

Judith Halverson commenced this adversary proceeding on April 24, 1991, seeking a ruling by the bankruptcy court concerning her ownership of or other proprietary interest in certain property held by Richard Halverson. She asserted that the Equitable Distribution Judgment gave her an ownership interest in 59.2046475% of Richard Halverson's property owned during the course of the marriage. She also sought a determination that she is entitled to a like percentage of all proceeds, products, offspring, rents or profits from the marital assets to be paid over to her immediately.

On February 24, 1992, Judith Halverson filed a motion for summary judgment seeking a determination that she was, as a matter of law, entitled to an order declaring the lien arising from her state court judgment to be an allowed secured claim in

---

1. By virtue of the automatic stay under 11 U.S.C. § 362(a), which went into effect upon the filing of the petition, the attempted termination of the remaining franchises by McDonald's Corporation was of no force and effect.

the amount of $2,054,389.61.[2] On May 4, 1992, the United States Bankruptcy Court for the Middle District of North Carolina entered a judgment granting her motion. It is from this judgment that Richard Halverson appeals.

### III.

In reviewing the bankruptcy court's ruling on summary judgment this court must apply a *de novo* standard. *In re Campbell*, 812 F.2d 1465, 1467 (4th Cir.1987).

Judith Halverson argues that she holds equitable title to or an interest in Richard Halverson's assets pursuant to the Equitable Distribution Judgment. Alternatively, she argues that she holds an equitable title or interest as the beneficiary of a constructive trust which arose when her interest in the marital assets was transferred to Richard Halverson by the Equitable Distribution Judgment. In any case, Judith Halverson argues, and the bankruptcy court so ruled, that her equitable title or interest constitutes an unavoidable secured claim pursuant to 11 U.S.C. § 541(d) which may not be defeated under 11 U.S.C. § 544 or otherwise. Finally, Judith Halverson argues that the bankruptcy court's judgment is well supported by policy considerations.

Richard Halverson admits that the Equitable Distribution Judgment constitutes a lien upon all real property located in Forsyth County, North Carolina, which was titled solely in his name on the date of the docketing of the judgment; however, he argues that Judith Halverson is the holder of a liquidated, but disputed,[3] unsecured claim with respect to his personal property. It is further Richard Halverson's position that Judith Halverson has an unperfected judgment lien against specific personal property. Richard Halverson argues that this lien is unperfected because Judith Hal-

verson did not attempt to execute against his personal property prior to the filing of the Chapter 11 proceeding.[4]

The parties agree that Judith Halverson has a perfected security interest in certain real property located in Forsyth County. Likewise, the parties agree that there is no dispute before this court regarding the amount or existence of Judith Halverson's claim. Thus, the central issue on appeal is whether Judith Halverson has a perfected judicial lien on Richard Halverson's personal property arising out of the Equitable Distribution Judgment.

### IV.

When a bankruptcy petition is filed, an estate is created which is comprised of all legal and equitable interests of a debtor in property as of the commencement of the case. 11 U.S.C. § 541(a)(1). Richard Halverson is a debtor-in-possession and, as such, has all of the rights and powers of a trustee, including those granted by 11 U.S.C. § 544(a)(1). *See* 11 U.S.C. § 1107(a). Section 544(a)(1), the "strong-arm section," provides in essence that a trustee or debtor-in-possession has, as of the commencement of the case, the rights and powers of a creditor that has extended credit to the debtor at the commencement of the case and that obtained a judicial lien on all property which a creditor on a simple contract could have obtained, whether or not such a creditor exists. Under Section 544(a)(1), the trustee or debtor-in-possession has all the power of a hypothetical creditor of the debtor who, as of the commencement of the case, has completed the legal process for perfection of a lien on all property available for the satisfaction of his claim against the debtor. 4 *Collier on Bankruptcy* ¶ 544.02 at 544–6 (15th ed. 1992). Thus, the ques-

---

**2.** This figure represents 59.2046475% of the marital estate as calculated in the Equitable Distribution Judgment.

**3.** The amount of Judith Halverson's claim is being disputed through an appeal of the Equitable Distribution Judgment to the North Carolina Court of Appeals. This was not a matter addressed by the bankruptcy court, and it is not an issue on appeal to this court.

**4.** The March 19, 1991, levy on two of Richard Halverson's McDonald's restaurants effected a seizure of equipment in those restaurants which was the object of a senior lien securing an indebtedness far in excess of the value of the equipment and a seizure of cash which had already been distributed pursuant to an order of the bankruptcy court.

tion raised here is whether on the day the bankruptcy petition was filed a perfected judicial lien creditor of Richard Halverson would have had rights superior to Judith Halverson with respect to Richard Halverson's personal and intangible property. The answer to this question is a matter of state law. *Id.* at 544–9.

▉▉▉ Under North Carolina law, a judgment creditor acquires no lien on personal property until there has been a valid levy on that property. *See Wilmington Nursery Co. v. Burkert,* 36 B.R. 813, 816 (Bankr.E.D.N.C.1984); *Ferguson v. Morgan,* 282 N.C. 83, 87, 191 S.E.2d 817, 819 (1972); *Community Credit Co. v. Norwood,* 257 N.C. 87, 91, 125 S.E.2d 369, 372 (1962). North Carolina General Statute Section 1–313(1) provides in pertinent part as follows:

> No Lien on Personal Property until Levy.—If [the execution] is against the property of the judgment debtor, it shall require the officer to satisfy the judgment out of his personal property; and if sufficient personal property cannot be found, out of the real property belonging to him on the day when the judgment was docketed in the county, or at any time thereafter; but no execution against the property of a judgment debtor is a lien on his personal property, as against any bona fide purchaser from him for value, or as against any other execution, except from the levy thereof.

Judith Halverson has presented no North Carolina case law to support her contention that an equitable distribution judgment should be treated differently than any other type of judgment. In this case, Judith Halverson either did not take the steps necessary to levy on Richard Halverson's personal property prior to the filing of the petition or was unsuccessful in doing so;[5] therefore, Judith Halverson does not have a perfected judicial lien on Richard Halverson's personal property. In this situation,

the "strong-arm section" of the Bankruptcy Code applies to give the Debtor-in-Possession superior rights in Richard Halverson's personal property, thus leaving Judith Halverson a general unsecured creditor.

### V.

Judith Halverson also argues, and the bankruptcy court found, that she holds equitable title to, or an equitable interest in, Richard Halverson's personal property pursuant to the Equitable Distribution Judgment. The bankruptcy court concluded that through the North Carolina equitable distribution statutes, specifically North Carolina General Statute Section 50–20(k), the North Carolina legislature intended some form of common ownership between spouses in marital property. Judith Halverson further argues that she acquired an enforceable and unavoidable secured claim against Richard Halverson's estate pursuant to 11 U.S.C. § 541(d)[6] because of this equitable title or interest in his personal property.

▉▉▉ The court cannot agree that Judith Halverson holds equitable title to Richard Halverson's personal property pursuant to the Equitable Distribution Judgment. Thus, 11 U.S.C. § 541(d) is inapplicable, and the "strong-arm section" applies to give the Debtor-in-Possession superior rights in Richard Halverson's personal property. The mere classification of separately-titled property as "marital property" does not give one spouse an equitable title to or an interest in the separately-owned property of the other. Courts interpreting North Carolina's equitable distribution statutes have uniformly reached this conclusion. *See Perlow v. Perlow,* 128 B.R. 412 (E.D.N.C.1991); *Hagler v. Hagler,* 319 N.C. 287, 354 S.E.2d 228 (1987); *Wilson v. Wilson,* 73 N.C.App. 96, 325 S.E.2d 668, *petition for discretionary review denied,* 314 N.C. 121, 332 S.E.2d 490 (1985).

---

5. *See supra* note 4.

6. 11 U.S.C. § 541(d) states in pertinent part that "[p]roperty in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest ... becomes property

of the estate ... only to the extent of the debtor's legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold."

Section 50–20(k) of the North Carolina General Statutes provides that "[t]he rights of the parties to an equitable distribution of marital property are a species of common ownership, the rights of the respective parties vesting at the time of the parties' separation." The North Carolina Court of Appeals has stated that this section does not create substantive rights in any party to particular marital property. *Wilson,* 73 N.C.App. at 99, 325 S.E.2d at 670. In pertinent part, the court stated:

The legislature's intent in subsection k was to create *a right to equitable distribution* of the marital property, which had not existed up to that time, and to make that right vest at the time of filing for divorce. Subsection k did not create any vested rights in *particular marital property;* it created a right to the equitable distribution of that property, whatever a court should determine that property is.

*Id.* The North Carolina Supreme Court's position is similar to that of the North Carolina Court of Appeals. In *Hagler v. Hagler,* the court stated that the equitable distribution statutes do not displace the traditional principles of property ownership and that nothing in the act created a new form of ownership. *Hagler,* 319 N.C. at 290, 354 S.E.2d at 232.

■ Finally, Judith Halverson contends that she holds equitable title to Richard Halverson's personal property as the beneficiary of a resulting or constructive trust. She argues that a constructive trust is appropriate in this situation because Richard Halverson failed to execute the documents necessary to fully secure her as required in the Equitable Distribution Judgment. Once again, Judith Halverson is seeking to invoke 11 U.S.C. § 541(d) to preclude application of the "strong-arm section." Whether the facts of a particular case justify imposition of a resulting or constructive trust is a question of state law. *Fulp v. Fulp,* 264 N.C. 20, 140 S.E.2d 708 (1965), sets forth the requirements for the imposition of a resulting or constructive trust under North Carolina law:

'(A) resulting trust arises, if at all, in the same transaction in which the legal title passes, and by virtue of consideration advanced before or at the time the legal title passes'.... A constructive trust, on the other hand, arises when one obtains the legal title to property in violation of a duty he owes to another. Constructive trusts ordinarily arise from actual or presumptive fraud and usually involve the breach of a confidential relationship.

*Id.* at 22, 140 S.E.2d at 711 (citations omitted) (quoting *Rhodes v. Raxter,* 242 N.C. 206, 208, 87 S.E.2d 265, 267 [1955]). It is clear that North Carolina law does not allow the imposition of a resulting or constructive trust in a situation where legal title has not changed hands, and there has been no transfer of legal title in this case. Consequently, 11 U.S.C. § 541(d) has no application, and the "strong-arm section" gives the Debtor-in-Possession superior rights in Richard Halverson's personal property.

### VI.

For the reasons stated above, the judgment entered by the Bankruptcy Court on May 4, 1992, granting summary judgment for Appellee Judith B. Halverson is REVERSED, and the case is REMANDED to the Bankruptcy Court. Appellee Judith B. Halverson has a general unsecured claim against her former husband's property, except to the extent the lien of the Equitable Distribution Judgment attached to real estate owned by Appellant–Debtor Richard L. Halverson as of the date of the docketing of the Judgment, and except as to any personal property upon which there was a specific levy of execution.