Lynn LYERLY, Appellant,

v.

INTERNAL REVENUE SERVICE, Appellee.

No. 5:96CV36.

United States District Court, W.D. North Carolina, Statesville Division.

Sept. 8, 1998.

R. Keith Johnson, Charlotte, NC, for plaintiff/petitioner.

Thomas P. Holderness, Charlotte, NC, for defendant/respondent.

### MEMORANDUM AND ORDER

THORNBURG, District Judge.

**THIS MATTER** is before the Court on appeal from the United States Bankruptcy Court for the Western District of North Carolina. Having considered the issues raised by Appellant on appeal, the Court affirms the decision of the Bankruptcy Court in this matter.

### I. JURISDICTION

This Court has appellate jurisdiction of this matter pursuant to 28 U.S.C. § 158.

### II. STANDARD OF REVIEW

The Court shall review the findings of fact by the bankruptcy court using a clearly erroneous standard; conclusions of law are reviewed *de novo*. Fed.Bankr.R. 8013; *In re Tudor Assoc's., Ltd., II*, 20 F.3d 115, 119 (4th Cir.1994).

### III. STATEMENT OF FACTS

Appellant has failed to cite to the record in her summary of the facts of this case, contrary to Bankruptcy Rule 8010(a)(1)(D). As the Court may consider only those facts presented in the appellate record, it may not rely on the bald assertions contained in Appellant's brief, but must determine which facts are corroborated by the record. *See, e.g., Aquino v. Stone*, 957 F.2d 139, 144 (4th Cir.1992).

Appellant's husband, Walker Lyerly, III, filed a voluntary Chapter 11 bankruptcy case in May 1993. In March 1994, Mr. Lyerly filed an adversary proceeding to recover on a debt for services performed for Ro–Tech Medical Corporation, Thayer's Colonial Pharmacy, Inc., and William P. Kennedy, primarily on a theory of fraudulent conveyance. Transcript of Hearing, February 21, 1996, at 37–38. In August 1995, Appellant filed a motion to intervene in the adversary proceeding, on the theory that any recovery would be subject to equitable distribution, as Mr. Lyerly entered into the service contracts in question prior to his separation from Appellant in December 1994. On November 17, 1995, Mr. Lyerly made an assignment to Appellant of all proceeds to derive from any settlement of this lawsuit. *Id.*, at 40–41. At that time Appellant and her husband had been separated since December 6, 1994. *Id.*, at 50. No divorce filings appear in the record. Later in November, a settlement offer of $880,000 was made and approved by the Bankruptcy Court. *Id.* The Internal Revenue Service objected to the assignment of settlement proceeds to Appellant. Brief of Internal Revenue Service in Opposition to Motion for Approval of Assignment of Settlement Proceeds, filed February 16, 1996.

Following a hearing on the matter, the Bankruptcy Court denied the motion by Mr. Lyerly seeking approval of the assignment of proceeds to Appellant. Order of United States Bankruptcy Judge J. Craig Whitley, filed March 15, 1996. Judge Whitley denied the motion on the basis that according to Section 544 of the Bankruptcy Code, a trustee/debtor in possession in a Chapter 11 case is given the "rights and powers of certain types of creditors, including a judgment lien creditor, as of the commencement of this case." *Id.* Judge Whitley concluded that Mr. Lyerly's status as judgment lien creditor primes any interest that Appellant may have in the settlement proceeds based upon an equitable claim to marital property, and that such a claim does not create a

property right in any specific marital property such as settlement proceeds. *Id.* Judge Whitley further noted that Appellant failed to file a notice of her claim prior to Appellant's Chapter 11 filing, failed to file a proof of claim after the adversary proceeding was commenced, and finally, failed to object to the confirmation of Mr. Lyerly's Third Amended Plan of Reorganization. *Id.* While Appellant urged in the hearing on this matter that the settlement offer was increased following her intervention in the adversary proceeding, Judge Whitley found there was insufficient evidence in the hearing record to draw that conclusion. *Id.* Accordingly, Appellant's interest in the bankruptcy estate was determined to be that of a general unsecured creditor, to be paid after approved administrative expenses and the priority claims of the Internal Revenue Service. *Id.*

## IV. CONCLUSIONS OF LAW

Appellant made six assignments of error: (1) that the Bankruptcy Court erred in finding that Mr. Lyerly as trustee/debtor in possession was given the rights and powers of a judgment lien creditor, and that those powers primed Appellant's interest in the settlement proceeds; (2) that the Bankruptcy Court erred in finding that Appellant's marital interest constitutes an equitable claim that is not a property right in any specific marital property; (3) that the Bankruptcy Court erred in finding that Appellant's claim to marital property constitutes an unsecured claim against Debtor's bankruptcy estate; (4) that the Bankruptcy Court erred in finding that Appellant's failure to object to confirmation of Appellant's Third Amended Plan of Reorganization prevents her from receiving any part of the settlement proceeds under a theory of laches and estoppel; (5) that the Bankruptcy Court erred in finding inadequate evidence to conclude that Appellant's intervention in the adversary proceeding resulted in an increase in the settlement offer; and (6) that the Bankruptcy Court erred in deny-

ing the motion for approval of settlement proceeds.

■ Appellant failed to address in her brief assignments of error numbered 1, 5, and 6. The failure to present any argument concerning specific assignments of error constitutes abandonment of those issues on appeal. *Tucker v. Waddell,* 83 F.3d 688, 690 n. 1 (4th Cir.1996).

■ Appellant makes no argument to support her contention that Judge Whitley erred in finding that regardless of the classification of her claim under North Carolina law, the Chapter 11 trustee had a superior interest pursuant to Section 544. Mr. Lyerly, as debtor-in-possession possessed all of the rights and powers of a trustee. 11 U.S.C. § 544(a)(1); *see also,* 11 U.S.C. § 1107(a). Section 544(a)(1), the "strong arm" provision states, in pertinent part:

> (a) The trustee shall have, as of the commencement of the case ... the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—

> (1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien, whether or not such a creditor exists;

> (2) a creditor that extends credit to the debtor at the time of the commencement of the case, and obtains, at such time and with respect to such credit, an execution against the debtor that is returned unsatisfied at such time, whether or not such a creditor exists; or

> (3) a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the

time of the commencement of the case, whether or not such a purchaser exists. 11 U.S.C. 544(a)(1). Under Section 544(a)(1), a debtor-in-possession has all the power of a hypothetical lien creditor, who has completed the legal process for perfection of a lien on all property available for the satisfaction of his claim against the debtor. 4 *Collier on Bankruptcy,* ¶ 544.02 at 544–46 (15th ed.1992). The Bankruptcy Court, therefore, correctly determined that Debtor's status as hypothetical lien creditor primed any equitable interest of Appellant in the specific proceeds of the settlement. *In re Halverson,* 151 B.R. 358, 362 (M.D.N.C.1993).

■ Appellant claims that she has a property interest in the settlement proceeds pursuant to N.C.Gen.Stat. § 50–20(k), which states that, "[t]he rights of the parties to an equitable distribution of marital property are a species of common ownership, the rights of the respective parties vesting at the time of the parties' separation." It is uncontested in North Carolina case law that Section 50–20(k) does not create a property right, but rather a right to equitable distribution. Addressing this question, the North Carolina Court of Appeals held that:

> We cannot agree that G.S. 50–20(k) created substantive rights in any party to *particular marital property* which that party argues comes within the meaning of "acquired ... during the course of the marriage." The legislature's intent in subsection k was to create a right to equitable distribution of the marital property, which had not existed up to that time, and to make that right vest at the time of filing for divorce. Subsection k did not create any vested rights in particular marital property; it created a right to the equitable distribution of that property, whatever a court should determine that property is.

*Wilson v. Wilson,* 73 N.C.App. 96, 99, 325 S.E.2d 668, 670, *disc. rev. denied,* 314 N.C. 121, 332 S.E.2d 490 (1985) (emphasis added). *See also, Perlow v. Perlow,* 128 B.R.

412, 415 (E.D.N.C.1991). Appellant was not a signatory party to the contracts in question and does not attempt to base her claim to settlement proceeds on any other theory than that of marital property. Accordingly, the Court finds that the Bankruptcy Court properly concluded that Appellant had a right to equitable distribution in the marital estate, but had no specific property right in the settlement proceeds.

Appellant mistakenly relies on *Walston v. Walston,* 190 B.R. 66 (E.D.N.C.1995), in which the district court held that a spouse had a specific property interest in her husband's military pension since "that asset is defined by statute to be marital property." *Id.,* at 68–69; *Matter of Haynes,* 679 F.2d 718 (7th Cir.) ("[m]ilitary pensions have been held to be beyond the reach of a chapter 7 trustee, in that receipt of the pay is conditioned upon continuing obligations to the military."), *cert. denied,* 459 U.S. 970, 103 S.Ct. 299, 74 L.Ed.2d 281 (1982). Appellant argues for an unjustifiable expansion of the holding in *Walston,* given that her marital interest in the settlement proceeds at issue in this case is statutorily indistinguishable from an equitable interest in other marital property, such as common stock or living room furniture. It is precisely this type of confusion that the North Carolina Court of Appeals intended to hold in abeyance in *Wilson.*

▆▆▆ Appellant contests Judge Whitley's finding that her failure to file a proof of claim and to object to the confirmation of Debtor's Third Amended Plan of Reorganization constitutes laches which would preclude her recovery. The elements of laches are unreasonable delay resulting in prejudice to the opposing party. *White v. Daniel,* 909 F.2d 99, 102 (4th Cir.1990), *cert. denied,* 501 U.S. 1260, 111 S.Ct. 2916, 115 L.Ed.2d 1079 (1991). "An inexcusable or unreasonable delay may occur only after the [Appellant] discovers or with reasonable diligence could have discovered the facts giving rise to [her] cause of action." *Id.* (citation omitted). In this instance, Appellant was aware of Debtor's bankruptcy filing from its inception, was aware of the adversary proceeding, and finally was aware of Debtor's Third Amended Plan of Reorganization, to which she could have objected but did not. Prejudice to Appellee Internal Revenue Service, which stands to lose some part of its priority claim, "is demonstrated by a disadvantage on the part of the [Appellee] in asserting or establishing a claimed right or some other harm caused by detrimental reliance on the [Appellant's] conduct." *Id.* (citing *Gull Airborne Instruments, Inc. v. Weinberger,* 694 F.2d 838, 844 (D.C.Cir. 1982)). The IRS need not show prejudice, but benefits from an inference of prejudice where unwarranted delay is shown, requiring the Appellant "to prove facts manifesting an absence of actual prejudice." *Id.* (citing *Giddens v. Isbrandtsen Co.,* 355 F.2d 125, 128 (4th Cir.1966)). The facts of the instant case indicate a sufficient showing that Plaintiff's failure to act caused an unreasonable delay, and forcing the Appellee to defend against any claim which revisits Appellant's failure to file a proof of claim or to object to the reorganization plan would result in prejudice. Appellant's rights under N.C.Gen.Stat. § 50–20(k) arose on December 6, 1994, the date of her separation from the Debtor. Debtor's Third Amended Plan of Reorganization was filed on March 15, 1995, and confirmed on September 25, 1995. The Bankruptcy Court was therefore correct in finding that laches bars any claim to settlement proceeds by Appellant.

While Appellant makes an assignment of error as to the Bankruptcy Court's determination that insufficient evidence existed in the record to find that Appellant's intervention in the adversary proceeding caused an increase in the settlement offer, she has failed to address this contention in her brief. Further, a review of the hearing record and the Bankruptcy Court's findings reveals that Judge Whitley's determination is supported by the record and

does not constitute clear error. *In re Tudor*, 20 F.3d at 119.

Appellant's final assignment of error fails to allege any specific error, is also not addressed in her brief, and is therefore without merit.

### V. ORDER

**IT IS, THEREFORE, ORDERED** that the Bankruptcy Court's Order denying the motion for approval of assignment of proceeds is hereby **AFFIRMED,** and the appeal is hereby **DISMISSED.**

**IT IS FURTHER ORDERED** that this matter is hereby **REMANDED** to the Bankruptcy Court for further proceedings.