CYR, Senior Circuit Judge,
dissenting.
After apparently accepting the bankruptcy court’s cogent interpretation of the applicable legal principles, see In re Cox, 274 B.R. 13, 26-30 (Bankr.D.Me.2002),[17] the majority predicates its reversal upon the contention that the particular facts of this case warrant extraordinary equitable relief — viz., the impressment of a constructive or resulting trust upon the otherwise exempt Advest IRA — so as to preclude Cox from unjustly and unilaterally retaining marital property which rightly belonged to the joint marital estate. As its tenuous prediction of Maine law is improvident and its recourse to equitable relief entirely unnecessary, I respectfully dissent.
As the majority must concede, no Maine case law either explicitly or implicitly holds that a cognizable legal or equitable property interest in a marital asset — held exclusively in the name of one spouse — vests in both spouses instanter simply upon the filing of a divorce petition, rather than upon entry of a final decree of legal separation or divorce. Moreover, arguably at least, some Maine decisional law implies quite the opposite. See Long v. Long, 697 A.2d 1317, 1321 (Me.1997) (“The ‘marital property’ designation grants no present rights in the property during the marriage.”) (emphasis added).[18]
*95 The majority predicates-its construction upon a presumed legislative intent — motivating the 1972 amendment to the Maine divorce statute — to accord divorcing spouses “more” protection from divestments of property jointly acquired during the marriage. Although this is so, the operative question is how far the Maine Legislature intended to go in according “more” protections. The pre 1972 Maine statute accorded overwhelming weight to a single, formalistic criterion — viz., which spouse is the named titleholder of the property at issue — and the amended divorce statute undeniably accords more protection to the non-titleholder spouse by even including such separately-held property in the marital estate, and by directing the divorce court to distribute separately-held property to either spouse as well, based -upon its consideration of a panoply of -equitable considerations aside from the record title.
I'would submit, however, that the majority' proceeds upon extremely unstable ground in extrapolating from the nebulous legislative purpose, in order to bolster the “partnership” or “joint enterprise” theory of marriage, to the majority’s thesis that the legislature must have intended other— yet more expansive — reforms. Cf., e.g., Lyerly v. IRS, 235 B.R. 401, 404 (W.D.N.C.1998) (“The [North Carolina] legislature’s intent ... was to create a right to equitable distribution-of the marital property, which had not existed up to that time, and to make that right vest at the time of filing for divorce. [The amended divorce statute] did not create any vested rights in particular marital property; it created a right to the equitable distribution of that property, whatever a court should determine that property is.”) (emphasis added).
The holdings in those non-Maine decisions which are characterized by the majority as lending “significant support” to its approach — e.g., Walston v. Walston, 190 B.R. 66, 67-69 (E.D.N.C.1995), and In re Perry, 131 B.R. 763, 766-67 (Bankr.D.Mass.1991) — are not only exceptionally terse,- but rest upon the dubious notion that a constructive or resulting trust is essential to the achievement of an “equitable” result. But see supra note 1 (cataloging dozens of judicial decisions rejecting the Walston-Perry rationale). Normally, we may resort to equitable remedies, such as unjust enrichment and its concomitant remedy of constructive trust, only after concluding that the complainant has or will have no “adequate” remedy at law. See Infusaid Corp. v. Intermedies Infusaid, Inc., 739 F.2d 661, 668 (1st Cir.1984); see also Stanton v. Trustees of St.. Joseph’s College, 233 A.2d 718, 723 (Me.1967). The majority, on the other hand, -simply posits that since Davis- is unable to attach the Advest IRA under the statute, we may conclude instanter that Davis is without any meaningful recourse other than a constructive trust. As the Bankruptcy Code explicitly contemplates an orderly succession of remedies in these sorts of cases, and Davis has yet to exhaust -such available legal remedies, I respectfully disagree.
Davis either had, has, or will have various legal remedies to protect her unvested rights in the Advest IRA.[19] Even under the *96 rationale adopted by the bankruptcy court, the filing of the Cox bankruptcy petition simply terminated Davis’s rights in the specific property (viz., the Advest IRA), see In re Abma, 215 B.R. 148, 151 (Bankr.N.D.Ill.1997) (“[N]on-debtor spouse’s rights in specific marital property were cut off by the bankruptcy filing.”) (emphasis added), whereas she retains a $65,250 unsecured claim against the Cox bankrupt estate. See Davis v. Cox, 274 B.R. 13, 23 (Bankr.D.Me.2002). Thus, Davis may share pro rata in any dividend available to Cox’s unsecured creditors. Nonetheless, the majority implicitly concludes that Davis can recover but a pittance, a speculative prediction at best given the mercurial nature of bankruptcy proceedings at such an early juncture. See In re Anjum, 288 B.R. 72, 73 n. 1 (Bankr.S.D.N.Y.2003) (“[T]he [non-debtor spouse’s] entitlement to share in the debtor’s estate has no value in this no-asset case, but could be of great value in another case.”).[20]
Finally, even assuming that the pro rata share realized by Davis were to prove meager, the balance of her $65,250 claim would remain presumptively non-dis-chargeable in bankruptcy. Bankruptcy Code § 523(a)(15) excepts from discharge any debt
not of the kind described in [§ 523(a) ](5) that is incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record, a determination made in accordance with State or territorial law by a governmental unit unless—
(A) the debtor does not have the ability to pay such debt from income or property of the debtor not reasonably necessary to be expended for the maintenance or support of the debtor or a dependant of the debtor and, if the debtor is engaged in a business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business; or
(B) discharging such debt would result in a benefit to the debtor that outweighs the detrimental consequences to a spouse, former spouse, or child of the debtor.
11 U.S.C. § 523(a)(15).
Thus, Cox would have to carry the burden of proving one of these two criteria in order to obtain a discharge of the property-settlement claim held by Davis. See In re Lawrence, 237 B.R. 61, 83 (Bankr.D.N.J.1999). The “ability to pay” factor in Bankruptcy Code § 523(a)(15)(A) enables the bankruptcy court to consider the present and future prospects for repayment from Cox’s expendable property, including *97 any assets, previously acquired in contravention of the divorce court injunction, which remain in Cox’s possession, see supra note 3; or from Cox’s disposable income, including future wages. See Feldmann v. Feldmann (In re Feldmann), 220 B.R. 138, 145-46 (Bankr.N.D.Ga.1998). Were Cox unable to sustain this substantial burden of proof, the obligation due Davis, would remain undischarged, notwithstanding a general discharge in bankruptcy. See Bowden v. Grindle, 675 A.2d 968, 972-73 n. 2 (Me.1996) (noting that one element of “unjust enrichment” claim is inequitable retention of benefit “without payment ”) (emphasis added). Consequently, the significance of this potential post-petition remedy under subsection 523(a)(15) cannot ,be ignored.
Moreover, Bankruptcy Code § 523(a)(15) imports the same types of equitable considerations and balancing requirements as undergird the state-law remedies of constructive and resulting trusts, in many respects paralleling the “economic misconduct” inquiry mandated under the Maine divorce statute’s scheme for equitable distribution. See supra note 3. Thus, assuming arguendo that Cox deliberately engaged in financial shenanigans with the Advest IRA, he cannot anticipate any considerable windfall in bankruptcy.[21]
The majority proposes that the bankruptcy court ruling effectively nullifies the divorce decree, and offends the well-accepted principles that (i) state law normally defines property rights in bankruptcy, and (ii) the state divorce court-possesses a more specialized expertise to undertake the equitable distribution of marital property than does a federal bankruptcy court. But, of course, the bankruptcy court did defer to the state court’s expertise when it granted the first motion to lift the automatic stay — filed by Davis — while at the same time explicitly stating that “relief from the stay is not granted to implement any property settlement absent further order of this court.” (Emphasis added.)
Just as state courts possess special competence in determining equitable marital-property distributions, so too it cannot be gainsaid that they possess a specialized expertise in declaring state law. In determining its equitable property division, -the divorce court-though presumably aware that Cox could exempt the entire IRA account pursuant to Maine law — declined the trustee’s invitation to reach the difficult state-law questions presently before us: whether Davis acquired an equitable property interest in the Advest IRA at the time she filed for divorce, or whether the equities in this case mandated that Cox hold the IRA in constructive or resulting trust for Davis. Davis did not appeal from the divorce judgment on the ground that it failed adequately to define the nature of her state-law rights in the IRA. Once the state court has pronounced the spouses’ respective distributive rights, the Bankruptcy Code governs the ramifications of these pronouncements in the context of the Cox bankruptcy case.
Although one may sympathize with Davis in the present predicament, as well as with the majority’s conscientious intention to minimize its impact, the intervention of a bankruptcy petition very frequently entails unfortunate consequences for the most innocent of parties. Plainly and understandably, then, Davis would *98 prefer the more immediate, convenient, and predictable remedy afforded by a constructive or resulting trust. Yet somewhat lesser alternative remedies at law — even if merely adequate — take precedence over equitable remedies, see Infusaid Corp., 739 F.2d at 668, lest equitable relief become mere redundant surplusage. Accordingly, once Congress explicitly prescribes legal remedies under the Bankruptcy Code for spouses with property settlement claims, courts must recognize that such settlements presumptively are to be treated as “claims” in bankruptcy. Consequently, at a minimum the courts are to defer any decision as to whether to seize upon extraordinary state-law equitable remedies until such time as a spouse has unsuccessfully exhausted all such remedies. At that juncture, the bankruptcy court can then address the issue competently.
For the foregoing reasons, I would hold that the Cox IRA became part of the bankrupt estate prior to the Davis property settlement. See supra note 1. As I believe the bankruptcy court decision should be affirmed, I respectfully dissent.

. See also, e.g., Robbins v. Robbins (In re Robbins), 964 F.2d 342, 346 (4th Cir.1992) (noting that debtor-spouse’s separately-held property becomes part of bankrupt estate; non-debtor spouse holds an unsecured claim); In re Anjum, 288 B.R. 72, 76-77 (Bankr.S.D.N.Y.2003) (same, collecting cases); In re Lawrence, 237 B.R. 61, 80-81 (Bankr.D.N.J.1999); In re Abma, 215 B.R. 148, 152 (Bankr.N.D.Ill.1997); In re Palmer, 78 B.R. 402, 406 (Bankr.E.D.N.Y.1987).

. The majority heavily relies upon such cases as Long, which ambiguously advert to the accrual of present rights in the marital *95 estate "on divorce.” While it may be arguable that this phrase would permit an interpretation which includes the time period from the filing of a divorce petition to the entry of a final divorce decree, the much more plausible and natural construction is that "on divorce” refers simply to the time commencing with the entry of the final divorce decree. Thus, Davis could have accrued no present rights in the Advest IRA until after it had become property of the Cox bankrupt estate.

. Davis has already invoked án important state-law legal remedy. Even if the Advest IRA is entirely exempt from attachment, see *96 Me.Rev.Stat. Ann. tit. 19-A, § 903(5); see also Me.Rev.Stat. Ann. tit. 14, § 4422(13)(F) (limiting IRA exemption to amount "reasonably necessary for the support of the debtor”), the Maine divorce statute authorizes the divorce court to factor in a party’s "economic misconduct” in apportioning the marital property (viz., when effectively setting a value to Davis’s unsecured claim), and so the injunction that issues when spouses file a petition for divorce constituted a valuable legal remedy to Davis, see Me.Rev.Stat. Ann. tit. 19-A, § 903(1). As Cox was enjoined from transferring the Advest IRA funds except for ordinary and necessary personal expenses, and Cox violated the injunction, Davis could have initiated a civil contempt proceeding against Cox, or requested the divorce court to adjust the property settlement to compensate Davis for Cox's dissipation of the IRA. She elected to avail herself of the latter remedy.

. Based upon a current assessment of the condition of the estate, the trustee predicted that the dividend could approximate ten-percent, which would result in a $6,525 recovery for Davis.

. Moreover, even assuming Davis were unable to prevail under § 523(a)(15), she could pursue a non-dischargeability ruling under § 523(a)(6) (excepting from discharge any debt "for willful and malicious injury by the debtor”), based upon Cox's prior violations of the divorce court injunction. See Siemer v. Nangle (In re Mangle), 274 F.3d 481, 484 (8th Cir.2001) (noting that contempt judgments may be excepted from discharge under § 523(a)(6)).